******************************************

    The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

    All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

    The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# TOWN OF LEDYARD *v.* WMS GAMING, INC.
## (SC 20418)

Robinson, C. J., and McDonald, Mullins, Kahn and Cradle, Js.

*Syllabus*

Pursuant to statute (§ 12-161a), "[i]n the institution of proceedings by any municipality to enforce collection of any delinquent tax on personal property from the owner of such property, through . . . any other proceeding in law in the name of the municipality for purposes of enforcing such collection, such person shall be required to pay any . . . reasonable attorney's fees incurred by such municipality as a result of and directly related to such . . . collection proceedings."

The plaintiff town sought to collect unpaid personal property taxes that it had imposed on slot machines that the defendant, W Co., owned and leased to an Indian tribe for use at the tribe's casino. After the plaintiff filed its collection action in state court, the tribe filed an action in federal court, challenging the plaintiff's authority to impose property taxes on the slot machines. A federal court of appeals ultimately held that the plaintiff's authority to impose property taxes on the slot machines was not preempted by federal law. The plaintiff and W Co. then executed a stipulation regarding the outstanding taxes, interest, penalties, and the attorney's fees incurred in the state collection action, but they disagreed as to whether the trial court could also find W Co. liable for attorney's fees incurred by the plaintiff in defense of the federal action commenced by the tribe, to which W Co. was not a party. The plaintiff and W Co. filed separate motions for summary judgment on that issue, and the trial court granted the plaintiff's motion and denied W Co.'s motion, concluding that the plaintiff was entitled to the attorney's fees that it had incurred in defending the federal action pursuant to § 12-161a. The trial court rendered judgment for the plaintiff only as to liability with respect to the attorney's fees incurred in the federal action, and W Co. appealed to the Appellate Court. The Appellate Court reversed the trial court's judgment, concluding that the phrase "as a result of and directly related to," as used in § 12-161a, required a closer proximal nexus between the collection proceeding and the requested attorney's fees than the expansive interpretation applied by the trial court and that the claims advanced in the federal action, although significant to the ultimate resolution of the tax collection issue in the state proceeding, did not directly result in a final determination of the rights and obligations of the parties relative to the claimed delinquent taxes. On the granting of certification, the plaintiff appealed to this court. *Held* that the Appellate Court improperly reversed the trial court's decision to grant the plaintiff's motion for summary judgment because the Appellate Court incorrectly construed § 12-161a narrowly to limit the scope of the plaintiff's entitlement to attorney's fees to only those fees incurred in the state collection action: because § 12-161a was ambiguous with respect to the scope of the attorney's fees that are considered "as a result of and directly related to" a state collection proceeding, this court considered extratextual evidence, including legislative history, statutes containing similar language, and the treatment of the phrase "as a result of and directly related to" in Connecticut case law, and concluded that the ambit of § 12-161a includes a directly related federal action that is determinative of a municipality's authority to pursue the underlying state collection proceeding; in the present case, the attorney's fees attributable to the federal action were a result of and directly related to the state collection action within the meaning of § 12-161a, as the federal action was filed after the commencement of the state collection action for the purpose of staying the state collection action and was determinative of the state action; moreover, the restrictive construction of § 12-161a adopted by the Appellate Court and advanced by W Co. would lead to the absurd result of frustrating government administration insofar as the plaintiff, after successfully litigating its authority to pursue a specific collection action, could incur an actual loss of revenue as a result of its inability to recover attorney's fees in defending the federal action.

Argued November 19, 2020—officially released April 21, 2021*

*Procedural History*

Action to recover unpaid personal property taxes, and for other relief, brought to the Superior Court in the judicial district of New London, where the parties entered into a stipulated agreement; thereafter, the court, *Vacchelli, J.*, granted the plaintiff's motion for summary judgment as to liability and denied the defendant's motion for summary judgment as to liability, and the defendant appealed to the Appellate Court, *DiPentima, C. J.*, and *Beach, Alvord, Sheldon* and *Prescott, Js.*, which granted the plaintiff's motion to dismiss the appeal; thereafter, the defendant, on the granting of certification, appealed to this court, which reversed the Appellate Court's judgment and remanded the case to that court with direction to deny the plaintiff's motion to dismiss and for further proceedings; subsequently, the Appellate Court, *DiPentima, C. J.*, and *Keller* and *Noble, Js.*, reversed the trial court's judgment and remanded the case to that court with direction to deny the plaintiff's motion for summary judgment as to liability and to grant the defendant's motion for summary judgment as to liability, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *judgment directed.*

*Proloy K. Das*, with whom were *Lloyd L. Langhammer* and *Kevin W. Munn*, for the appellant (plaintiff).

*Aaron S. Bayer*, with whom, on the brief, was *David R. Roth*, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. The sole issue in this certified appeal is whether General Statutes § 12-161a,[1] which allows trial courts to award a municipality attorney's fees incurred "as a result of and directly related to" proceedings to collect delinquent personal property taxes, includes attorney's fees incurred in a related federal action regarding the municipality's authority to impose such personal property taxes. The plaintiff, the town of Ledyard, appeals, upon our grant of its petition for certification,[2] from the judgment of the Appellate Court reversing the judgment of the trial court and directing summary judgment for the defendant, WMS Gaming, Inc. *Ledyard* v. *WMS Gaming, Inc.*, 192 Conn. App. 836, 850, 218 A.3d 708 (2019). On appeal, the plaintiff claims that the Appellate Court improperly construed § 12-161a in concluding that the defendant's liability for attorney's fees under the statute is limited to the collection proceeding in state court and does not include the related federal court proceeding. See id., 845. We conclude that the ambit of § 12-161a includes a directly related federal action that is determinative of a municipality's authority to pursue the underlying state collection proceeding. Accordingly, we reverse the judgment of the Appellate Court.

The record reveals the following relevant facts and procedural history, as set forth in the various decisions issued by this court and the Appellate Court in this case. See *Ledyard* v. *WMS Gaming, Inc.*, 330 Conn. 75, 78–80, 191 A.3d 983 (2018); *Ledyard* v. *WMS Gaming, Inc.*, supra, 192 Conn. App. 839–42; *Ledyard* v. *WMS Gaming, Inc.*, 171 Conn. App. 624, 625–28, 157 A.3d 1215 (2017), rev'd, 330 Conn. 75, 191 A.3d 983 (2018). "On August 3, 2006 . . . the Mashantucket Pequot Tribal Nation (Tribal Nation) filed an action in the United States District Court for the District of Connecticut challenging the authority of the state of Connecticut [state] and the plaintiff to impose property taxes on slot machines owned by Atlantic City Coin & Slot Co. (AC Coin) and leased to the Tribal Nation, for use in its gaming operations. In that complaint, the Tribal Nation alleged that the plaintiff lacked the authority to impose the property tax because such taxation is preempted by federal regulation of Indian gaming pursuant to both the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 through 2721 . . . and the Final Mashantucket Pequot Gaming Procedures, 56 Fed. Reg. 24,996 (May 31, 1991), and that the taxation was an illegal interference with the Tribal Nation's sovereignty. The present action was filed [in the trial court] on June 23, 2008, to collect unpaid personal property taxes for gaming equipment owned by the defendant and leased to the Tribal Nation for its gaming operations."[3] *Ledyard* v. *WMS Gaming, Inc.*, supra, 192 Conn. App. 839.

"[T]he plaintiff [in the present action] sought

$18,251.23 in unpaid personal property taxes, plus costs, interest, and penalties. In addition, the plaintiff sought attorney's fees pursuant to . . . § 12-161a.

"Shortly after the plaintiff had commenced the underlying state action, the Tribal Nation filed [a second] action in the United States District Court for the District of Connecticut challenging the authority of the state . . . and the plaintiff to impose the taxes at issue in the present state action. Although it was not a party to the federal action commenced by the Tribal Nation, the defendant filed a motion to stay the present state action pending the outcome of the federal action, which the trial court, *Martin, J.*, granted.

"On March 27, 2012, the District Court ruled on [the parties'] motions for summary judgment filed in the . . . federal action. The District Court, determining that the authority of the state and the plaintiff to impose the taxes was preempted by federal law, granted the Tribal Nation's motion for summary judgment and denied separate motions for summary judgment filed by the plaintiff and the state . . . . See *Mashantucket Pequot Tribe* v. *Ledyard*, Docket No. 3:06CV1212 (WWE), 2012 WL 1069342, *12 (D. Conn. March 27, 2012), rev'd, 722 F.3d 457 (2d Cir. 2013). On July 15, 2013, the United States Court of Appeals for the Second Circuit reversed the District Court's judgment, concluding that the authority of the state and the plaintiff to impose the taxes was not preempted by federal law. See *Mashantucket Pequot Tribe* v. *Ledyard*, 722 F.3d 457, 477 (2d Cir. 2013).

"After the proceedings had resumed in the present state action, the parties executed a stipulation. Under the stipulation, the parties agreed that the defendant had tendered payment to the plaintiff for all outstanding taxes, accrued interest, and accrued penalties at issue. They further agreed that the plaintiff was entitled to reasonable attorney's fees and costs incurred in the underlying state action, the amount of which would be determined by the trial court and the payment of which would be accepted by the plaintiff as satisfaction of all of the taxes, interest, penalties, attorney's fees, and costs recoverable by the plaintiff with respect to the underlying state action. They disputed, however, whether the trial court could also find the defendant liable for attorney's fees incurred by the plaintiff in defense of the federal action commenced by the Tribal Nation to which the defendant was not a party . . . . The parties agreed to submit to the trial court the issue of whether the defendant was liable for the federal action attorney's fees.

"After executing the stipulation, the parties filed . . . motions for summary judgment as to liability only with respect to the federal action attorney's fees. On October 6, 2016, the trial court, *Vacchelli, J.*, issued its memorandum of decision granting the plaintiff's motion for sum-

mary judgment, denying the defendant's motion for summary judgment, and rendering . . . judgment as to liability only in favor of the plaintiff with respect to the federal action attorney's fees. The trial court concluded that the defendant was liable for the federal action attorney's fees pursuant to § 12-161a. The trial court further stated that the plaintiff could file a motion for attorney's fees within thirty days and that a hearing would be scheduled thereafter to determine the amount of the attorney's fees to which the plaintiff is entitled. Shortly thereafter, on October 11, 2016, the plaintiff filed a motion for attorney's fees.

"On October 25, 2016, [before] the trial court [scheduled] a hearing on the plaintiff's motion for attorney's fees, the defendant appealed [from] the trial court's decision with respect to the federal action attorney's fees [to the Appellate Court]." (Footnotes omitted; internal quotation marks omitted.) *Ledyard* v. *WMS Gaming, Inc.*, supra, 192 Conn. App. 839–41. "The plaintiff subsequently filed a motion to dismiss the appeal for lack of subject matter jurisdiction, which [the Appellate Court] granted on the ground that the trial court's decision was not yet an appealable final judgment because it had yet to determine the amount of attorney's fees owed to the plaintiff. . . . Thereafter, [this court] reversed the judgment of [the Appellate Court] and remanded the case . . . to [the Appellate Court] with direction to deny the plaintiff's motion to dismiss." (Citation omitted.) Id., 841–42.

With respect to the merits of the defendant's appeal, the Appellate Court concluded on remand that the plain language of § 12-161a, specifically, "as a result of and directly related to," required a "more restrictive proximal nexus to the collection proceeding in which the attorney's fees are requested" than a proximate cause standard. Id., 845. The Appellate Court determined that the phrase "directly related," when read in context with "as a result of," imported a more restrictive meaning to the language of the statute. Id., 844–45. The court noted that, although the resolution of the federal action was significant to the ultimate outcome of the tax collection proceeding in state court, it "did not result directly in a final determination of the rights and obligations of the parties relative to the claimed delinquent tax." Id., 845. Therefore, the Appellate Court held that "only litigation fees incurred in the prosecution of the collection action itself would qualify as attorney's fees directly related to the collection proceeding as contemplated by § 12-161a." Id.; see id., 845–46 (noting that nature of "the claims that were at issue in the federal action," including claim that Tribal Nation lacked standing, supported its conclusion because, "far from incurring attorney's fees directly related to an action that would result in a final determination of the rights and obligations of the parties relative to the claimed delinquent tax, the attorney's fees in the federal action were

incurred in a collateral deviation or diversion from such a final determination"); see also id., 847–49 (comparing § 12-161a to other attorney's fee statutes, including General Statutes §§ 12-193 and 49-7). Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case to that court "with direction to deny the plaintiff's motion for summary judgment and to grant the defendant's motion for summary judgment." Id., 850. This certified appeal followed. See footnote 2 of this opinion.

On appeal, the plaintiff claims that the Appellate Court improperly construed § 12-161a to limit a municipality's entitlement to attorney's fees only to those incurred in the specific state court collections action. The plaintiff contends that the plain meaning of "as a result of and directly related to," as that phrase is used in § 12-161a, is "quintessential proximate cause language . . . ." The plaintiff asserts that the Appellate Court's narrow interpretation of § 12-161a would lead to bizarre results, such as a municipality's seeking to recoup unpaid property taxes but ultimately incurring greater financial losses as a result of the municipality's efforts, in a directly related case in a different forum, to defend its authority to impose such taxes. In response, the defendant argues that the Appellate Court improperly construed the plain meaning of § 12-161a because "interpreting 'directly related to' to mean proximate cause would make it duplicative of 'as a result of,' violating a cardinal rule of statutory interpretation." The defendant also argues that the attorney's fees incurred by the plaintiff were not actually caused by the underlying state court collection action against it because the Tribal Nation had already filed a federal action against the state and the plaintiff in 2006 challenging similar personal property taxes, meaning that the plaintiff would have incurred the attorney's fees in federal court regardless of whether it brought a collections action against the defendant. Finally, the defendant argues that we should affirm the judgment of the Appellate Court because the federal action was not proximately caused by the specific state collection action involving the plaintiff and the defendant but, rather, concerned issues of federal Indian law and federal preemption, which are subjects that are beyond the scope of § 12-161a. We agree with the plaintiff and conclude that the Appellate Court's interpretation of § 12-161a was too constrained in limiting the scope of a municipality's entitlement to attorney's fees only to those fees incurred in the specific collection action.

Whether the Appellate Court correctly determined that the plaintiff was not entitled to its attorney's fees in the federal action under § 12-161a is a question of statutory construction that presents a question of law over which we exercise plenary review. See, e.g., *Boisvert* v. *Gavis*, 332 Conn. 115, 141, 210 A.3d 1 (2019). It is well settled that we follow the plain meaning rule

pursuant to General Statutes § 1-2z in construing statutes "to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45, 213 A.3d 1110 (2019); see id., 45–46 (setting forth plain meaning rule).

Generally, Connecticut adheres to the American rule under which parties pay their own attorney's fees in the absence of a statutory exception. See, e.g., *Aaron Manor, Inc.* v. *Irving*, 307 Conn. 608, 617, 57 A.3d 342 (2013). Section 12-161a provides an exception in cases brought to collect delinquent personal property taxes, allowing trial courts to award to a municipality "reasonable attorney's fees incurred by such municipality *as a result of and directly related to* such levy and sale, enforcement of lien or other collection proceedings." (Emphasis added.) See footnote 1 of this opinion (setting forth relevant text of § 12-161a). This statutory language is the focus of our analysis in this appeal.[4]

In interpreting statutes, words and phrases are to be construed according to their "commonly approved usage . . . ." General Statutes § 1-1 (a); see, e.g., *State* v. *Panek*, 328 Conn. 219, 227–28, 177 A.3d 1113 (2018). Generally, in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage. See, e.g., *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 718, 207 A.3d 493 (2019). Contemporary to the passage of § 12-161a in 1982, "result" was defined as "something that results as a consequence, issue, or conclusion . . . ." Webster's New Collegiate Dictionary (1981) p. 980. "[D]irect" was defined as "characterized by close logical, causal, or consequential relationship," and "in a direct way . . . without an intervening agency or step . . . ." Id., p. 320. Finally, "related" was defined as "connected by reason of an established or discoverable relation . . . ." Id., p. 968. The meaning of the phrase "as a result of" does not seem to be in dispute because, as the Appellate Court noted, this court previously held in *Abrahams* v. *Young & Rubicam, Inc.*, 240 Conn. 300, 306, 692 A.2d 709 (1997), that "as a result of," in the legal context, is synonymous with proximate cause.[5] See *Ledyard* v. *WMS Gaming, Inc.*, supra, 192 Conn. App. 844. Instead, the issue in this case is the meaning of the complete phrase "as a result of and directly related to," rather than its individual words. General Statutes § 12-161a.

As required by § 1-2z, we first determine whether this statutory language is ambiguous. The plaintiff argues that, because the phrase "directly related to" is analogous to "direct cause," which has also been interpreted to be synonymous with proximate cause, it does not alter the meaning of the phrase. See *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 349, 493 A.2d 184 (1985) ("A proximate cause is a direct cause. It is

an act or failure to act, followed in its natural sequence by a result without the intervention of any other superseding cause."). The defendant, however, advances a similarly reasonable reading of the statutory text, arguing that the Appellate Court properly held that a closer proximal nexus is required because interpreting "directly related to" as meaning proximate cause would render the phrase superfluous, given the consensus that "as a result of" has been held to denote proximate cause. Because the text at issue allows for more than one plausible meaning, we are confronted with two reasonable readings of § 12-161a and deem it ambiguous for purposes of the § 1-2z analysis.[6] See, e.g., *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 534, 93 A.3d 1142 (2014). Accordingly, we now consider extratextual sources, including legislative history and similar statutes, to determine the scope of the attorney's fees that are "as a result of and directly related to" a state collection proceeding. See id.

In considering the scope of § 12-161a, we recognize the "well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation omitted; internal quotation marks omitted.) *Stafford* v. *Roadway*, 312 Conn. 184, 194, 93 A.3d 1058 (2014). A review of similarly worded statutes reveals that, when the legislature intends to limit the scope of recovery of attorney's fees to those incurred only in defense of state actions, it knows how to do so. For example, General Statutes § 12-140 provides in relevant part that "attorney's fees, for all fees and costs *incurred by the municipality in defending any civil action brought as a result of a tax sale or an alias tax warrant or which seeks to enjoin or declare unlawful any tax sale or alias tax warrant* . . . shall be paid by the delinquent taxpayer . . . ." (Emphasis added.) See *Cornelius* v. *Rosario*, 167 Conn. App. 120, 127, 143 A.3d 611 (2016) (holding that § 12-140 unambiguously allows recovery of reasonable attorney's fees incurred in defending plaintiff's action challenging tax sales). Similarly, General Statutes § 36a-237h (c) (2) provides in relevant part that "[a]ttorneys' fees and any related expenses *incurred in defending a legal action* for which immunity or indemnity is available under this section shall be paid . . . as they are incurred, in advance of the final disposition of such action upon receipt . . . ." (Emphasis added.) A comparison of the language in § 12-161a, namely, "any other proceeding in law in the name of the municipality for purposes of enforcing such collection, such person shall be required to pay *any court costs* . . . *or reasonable attorney's fees incurred by such municipality* as a result of and directly related to such . . . enforcement of lien or other collection proceedings," to the language in these other statutes strongly supports a conclusion that, had

the legislature intended a municipality to be entitled to *only* those fees incurred in the state court action for the prosecution of delinquent personal property taxes, it would have included such language rather than using language that suggests a broader reach beyond the docketed action.

Turning now to the extratextual sources, we note that there is no relevant legislative history available for § 12-161a, which was enacted in 1982; Public Acts 1982, No. 82-56, § 1; that sheds light on the legislature's intended scope of attorney's fees for municipalities in tax collection disputes. However, "it is well settled that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008). Thus, we find instructive case law construing § 12-193,[7] which contains similar language and provides for a municipality's entitlement to attorney's fees in foreclosure proceedings. See *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 27, 730 A.2d 1128 (1999). As the plaintiff points out, § 12-193 was first enacted in 1949 and subsequently was amended in 1975. See id., 27–28. The 1975 amendment, which was enacted prior to the passage of § 12-161a, altered the statute to allow municipalities to recover attorney's fees incurred in foreclosure proceedings. See id.; Public Acts 1975, No. 75-73, § 1. This court has previously observed that § 12-193 "was intended to put municipalities on a par with private foreclosing parties regarding costs and fees, and therefore to incorporate into such cases the long-standing principle that costs and fees in equitable actions are discretionary with the court . . . but ordinarily are imposed as in actions at law." *Danbury* v. *Dana Investment Corp.*, supra, 27.

Thus, we consider a series of decisions from the Superior Court considering the scope of a municipality's entitlement to attorney's fees under the language of § 12-193 in the context of foreclosure actions. This line of cases highlights a key distinction drawn by the Superior Court when denying attorney's fees for collateral actions; actions commenced prior to the foreclosure proceedings have not been considered "as a result of and directly related to" the underlying foreclosure action. See *Milford Tax, LLC* v. *Paradigm Milford, LLC*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-14-6015774-S (May 28, 2015) (60 Conn. L. Rptr. 473, 476) (work done in prior bankruptcy proceeding was not directly related to foreclosure action); *Groton*

v. *First Groton, LLC*, Superior Court, judicial district of New London, Docket No. CV-08-5008750 (March 25, 2011) (municipality was not entitled to attorney's fees for work related to collection of back taxes and intervening bankruptcy matters that commenced five years prior to commencement of foreclosure action); see also *White Sands Beach Assn., Inc.* v. *Bombaci*, Superior Court, judicial district of New London, Docket No. CV-04-0568713 (May 12, 2009) (awarding attorney's fees for work directly related to foreclosure action but not in defense of counterclaim). But see *Monroe* v. *Mandanici*, Superior Court, judicial district of Fairfield, Docket No. CV-92-0293234 (March 2, 1995) (awarding attorney's fees for defense of counterclaim to foreclosure action). Upon review of these decisions, we recognize that the timing of an action is an important factual consideration in determining whether an action is "a result of and directly related to" a state collection proceeding. This case is distinguishable from the aforementioned cases under § 12-193 because the federal action in this case, concerning the plaintiff's authority to impose personal property taxes on the defendant, was commenced by the Tribal Nation *after* the plaintiff had initiated the state collection proceeding. In addition to timing, it is significant that the federal action was commenced for the *purpose* of challenging the plaintiff's authority to pursue that same collection action on grounds of federal preemption.[8]

The defendant argues, however, that the federal action should not be considered "as a result of and directly related to" the state collection proceeding because it was commenced by a third party, namely, the Tribal Nation, and that litigation focused on issues of tribal sovereignty and federal preemption rather than the defendant's liability in connection with the state's tax collection. We disagree. Given the factual context of this case, in which it is undisputed that the Tribal Nation and the defendant coordinated and mutually agreed to bring the federal lawsuit, the fact that the defendant was not formally a party to the federal action is not an absolute bar to the plaintiff's entitlement to attorney's fees. As the trial court in the present case noted, "even a cursory examination of the complaint filed in the federal [District Court] demonstrates that it was an action to prevent the [plaintiff] from taxing the same . . . gaming machines [owned by the defendant] that were the subject of the [present] case. In describing the nature of the action, the operative federal complaint, filed after the [present] case was commenced, states: 'In clear disregard for well established principles of federal Indian law, the [plaintiff has] assessed property taxes on gaming equipment that the [Tribal Nation] leases from [the] Illinois based [defendant] . . . . The [Tribal Nation] seeks a declaration that the property taxes are void and illegal, and a permanent injunction preventing the [plaintiff and the state]

from assessing illegal taxes on the leased gaming equipment in the future.' . . . Thus, there can be no doubt that the federal action was directly aimed at stopping the collection proceedings, and, therefore, the fees incurred by the [plaintiff] in defending against it were directly related to and a result of the [plaintiff's] collection proceedings." (Citation omitted.) We further note that the Tribal Nation and the defendant were, at one point, represented by the same attorney, and the defendant "had certain indemnification agreements with the [Tribal Nation] with respect to the tax liabilities at stake in the event that the federal litigation was unsuccessful." Finally, it can hardly be ignored that, when seeking a stay of this state court action pending the federal litigation, the defendant justified its request by describing that federal action as " 'determinative' " of the state collection action.

Indeed, the Appellate Court's conclusion that municipalities are entitled to attorney's fees that are incurred only in the specific, docketed collection action contradicts a basic principle of statutory construction. This court has often stated that "it is axiomatic that those who promulgate statutes . . . do not intend to promulgate statutes . . . that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *Raftopol* v. *Ramey*, 299 Conn. 681, 703, 12 A.3d 783 (2011). As the plaintiff argues, the Appellate Court's limited construction of § 12-161a could well create the absurd result in which a municipality, required to defend its authority in federal court to pursue a specific collection action against a delinquent taxpayer, would incur "an actual loss of revenue . . . that adversely impacts its ability to provide municipal government services." Because frustration of government administration is an absurd result, the legislature cannot be presumed to have intended such a consequence. See id., 705; *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 294, 869 A.2d 1193 (2005).

Given the plain language of the statutory text and the treatment of the phrase "as a result of and directly related to" in prior Connecticut cases, as well as the potential for an absurd outcome in the present case if we were to determine otherwise, we conclude that the Appellate Court's interpretation of § 12-161a was too constrained. A municipality may be entitled to attorney's fees that are incurred in a collateral federal action that is "a result of and directly related to" a state tax collection proceeding. We emphasize, however, that our decision in this certified appeal is limited to a determination of the breadth of § 12-161a as applied to the facts of this case. The defendant's ultimate liability and the appropriate amount of reasonable attorney's fees to which the plaintiff is entitled from the federal action are dependent on factual determinations yet to be made by the trial court in connection with the plaintiff's pend-

ing motion for attorney's fees, namely, the extent to which the attorney's fees in the federal action were incurred in connection with proceedings relating to this defendant's slot machines. Accordingly, we conclude that, because the federal action in this case was commenced after the state collection action, concerned the plaintiff's authority to pursue that proceeding, and was determinative of that proceeding, and the record indicates the participation of the defendant in that collateral action, it was a result of and directly related to the state collection action, thus entitling the plaintiff to reasonable attorney's fees within the meaning of § 12-161a.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

* April 21, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 12-161a provides in relevant part: "In the institution of proceedings by any municipality to enforce collection of any delinquent tax on personal property from the owner of such property, through . . . any other proceeding in law in the name of the municipality for purposes of enforcing such collection, such person shall be required to pay any court costs, reasonable appraiser's fees or reasonable attorney's fees incurred by such municipality as a result of and directly related to such levy and sale, enforcement of lien or other collection proceedings."

[2] We granted the plaintiff's petition for certification, limited to the following issue: "Did the Appellate Court correctly conclude that . . . § 12-161a, which allows trial courts to award attorney's fees incurred by a municipality 'as a result of and directly related to' state court proceedings to collect unpaid personal property taxes, did not authorize the award of attorney's fees incurred by a municipality in defending a collateral action in federal court that challenged the municipality's authority to collect the personal property taxes at issue in the state court action?" *Ledyard* v. *WMS Gaming, Inc.*, 334 Conn. 904, 904–905, 220 A.3d 35 (2019).

[3] We note that, for purposes of this appeal, our focus is on the plaintiff's entitlement to attorney's fees incurred in the related federal action involving the defendant. The plaintiff's entitlement to attorney's fees incurred in defending its authority to tax AC Coin is not directly at issue.

[4] We note that neither the plaintiff's entitlement to attorney's fees nor the amount to which it is entitled is at issue in this appeal. Rather, this opinion is limited to the scope of attorney's fees that may be available to the plaintiff under § 12-161a.

[5] Although the defendant now argues that the Appellate Court improperly construed § 12-161a to require a closer nexus than proximate cause, the plaintiff points out that the defendant, in its brief to the Appellate Court, stated: " '[T]he phrase "incurred as a result of and directly related to" requires the [plaintiff] to show that the fees it seeks were *proximately caused* by this collection action against [the defendant].' " (Emphasis in original.) The plaintiff does not, however, argue that this position before the Appellate Court estops the defendant from advancing these arguments in this certified appeal.

[6] We note that, although there must be more than one reasonable interpretation of a statute in order for it to be considered ambiguous, those interpretations need not be necessarily strong or have a high probability of success. Put differently, a statute is plain and unambiguous when "the meaning . . . is so strongly indicated or suggested by the [statutory] language . . . that . . . it appears to be *the* meaning and appears to preclude any other likely meaning. . . . [I]f the text of the statute at issue . . . would permit more than one likely or plausible meaning, its meaning cannot be said to be plain and unambiguous." (Emphasis in original; internal quotation marks omitted.) *State* v. *Kalman*, 93 Conn. App. 129, 134, 887 A.2d 950, cert. denied, 277 Conn. 915, 895 A.2d 791 (2006); accord *State* v. *Miranda*, 274 Conn. 727, 738–39, 878 A.2d 1118 (2005) (*Borden, J.*, concurring).

[7] General Statutes § 12-193 provides: "Court costs, reasonable appraiser's fees, and reasonable attorney's fees incurred by a municipality *as a result of* any foreclosure action brought pursuant to section 12-181 or 12-182 *and directly related* thereto shall be taxed in any such proceeding against any person or persons having title to any property so foreclosed and may be collected by the municipality once a foreclosure action has been brought pursuant to section 12-181 or 12-182. A municipality shall reimburse a taxpayer for the costs of state marshal fees or any property seized if the court finds that such costs were incurred because of an error by the tax assessor or tax collector and not as the result of any action or failure on the part of the taxpayer." (Emphasis added.)

[8] We note that the Tribal Nation had initiated a prior federal action against the plaintiff in 2006 challenging the plaintiff's authority to impose taxes on another vendor working with the Tribal Nation, AC Coin. See *Mashantucket Pequot Tribe* v. *Ledyard*, supra, 2012 WL 1069342, *1. However, the timing of that action is not germane to this appeal, as the only question before us is whether the scope of § 12-161a expands beyond the docketed action to include related actions, such as the one initiated by the Tribal Nation challenging the plaintiff's authority to tax the defendant. See footnote 3 of this opinion.

————————————————