******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARIO CERAME *v.* EDWARD LAMONT, JR., ET AL.
(SC 20755)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Alexander, Js.*

*Syllabus*

Pursuant to statute (§ 53-37), "[a]ny person who, by his advertisement, ridicules or holds up to contempt any person or class of persons, on account of the creed, religion, color, denomination, nationality or race of such person or class of persons, shall be guilty of a class D misdemeanor."

The plaintiff sought injunctive and declaratory relief against the defendants, the governor of the state of Connecticut and the chief state's attorney, in the United States District Court for the District of Connecticut. The plaintiff specifically sought to permanently enjoin the enforcement of § 53-37 on the ground that it violates his constitutional right to free speech. In his complaint, the plaintiff alleged that he engages in certain speech that falls within the scope of the statute, including ridiculing others on the basis of their race, religion, creed, color, nationality, or denomination in order to express comradery and in the course of play with his closest friends and sometimes does so in open forums or on the Internet. He also alleged that he ridicules or holds up to contempt American nationals or persons of Italian heritage in his personal life, criticizes and ridicules Scientology and religious practices he considers harmful to society, sometimes uses racial slurs or impolite terms for individuals of certain religious denominations in his work as a free speech advocate, and republishes comedic material ridiculing others on the basis of their race, religion, creed, color, nationality, or denomination. The defendants moved to dismiss the action for lack of subject matter jurisdiction, claiming, inter alia, that the plaintiff lacked standing because he failed to allege an injury in fact, that is, that he faces a credible threat of prosecution under § 53-37. Thereafter, the District Court, pursuant to statute (§ 51-199b (d)), certified to this court the question of whether the speech alleged in the plaintiff's complaint comes within the scope of the phrase "by his advertisement," as used in § 53-37.

*Held* that § 53-37 did not apply to the speech alleged in the plaintiff's complaint because that speech did not constitute an "advertisement," as that term is used in the statute:

This court concluded that the phrase "by his advertisement" in § 53-37 did not plainly and unambiguously limit the scope of the statute to commercial speech because, although the common meaning of the term "advertisement" when the statute originally was enacted in 1917 and the use of that term in other contemporaneous statutes suggested that the legislature intended to restrict the meaning of that term to commercial speech, in some other circumstances, the legislature understood the term to extend beyond purely commercial speech, specifically in the context of election law.

Nonetheless, the legislature's intent, as revealed by the circumstances giving rise to the passage of the statute in 1917 and contemporaneous newspaper articles reporting that the legislation was proposed to target the specific, discriminatory commercial practice pursuant to which places of public accommodation or amusement would post signs outside of their business establishments indicating that members of certain ethnic, racial, or religious groups were not welcome, demonstrated that the legislature did not intend § 53-37 to encompass the type of personal, noncommercial speech alleged in the plaintiff's complaint but, rather, intended to restrict the statute's scope to purely commercial speech.

Argued January 13—officially released April 11, 2023

*Procedural History*

Action for declaratory and injunctive relief pertaining

to the alleged violation of the plaintiff's constitutional right to free speech, brought to the United States District Court for the District of Connecticut, where the defendants filed a motion to dismiss; thereafter, the court, *Hall, J.*, certified a question of law to this court concerning the applicability of General Statutes § 53-37 to the plaintiff's speech.

*Mario Cerame*, self-represented, the appellant (plaintiff), with whom was *Ikechukwu Ubaike*, certified legal intern.

*Timothy F. Costello*, supervisory assistant state's attorney, with whom, on the brief, were *Janelle Medeiros* and *Lisamaria T. Proscino*, assistant attorneys general, and *Thadius L. Bochain*, former assistant state's attorney, for the appellee (defendant Patrick J. Griffin).

*Zachary J. Phillipps* filed a brief for the Foundation for Individual Rights and Expression et al. as amici curiae.

*Opinion*

ALEXANDER, J. The sole issue in this case, which comes to us on certification from the United States District Court for the District of Connecticut; see General Statutes § 51-199b (d); is whether the speech alleged in the complaint of the plaintiff, Mario Cerame, comes within the scope of the phrase "by his advertisement," as used in General Statutes § 53-37.[1] Because the plaintiff's complaint does not allege any speech constituting an "advertisement," we conclude that § 53-37 does not apply.

The plaintiff brought this preenforcement action as a self-represented party against Governor Edward Lamont, Jr., and Chief State's Attorney Patrick J. Griffin,[2] alleging that § 53-37 violates his right to free speech under the first and fourteenth amendments to the United States constitution. He sought declaratory and injunctive relief, specifically seeking to permanently enjoin the enforcement of § 53-37, which provides that "[a]ny person who, by his advertisement, ridicules or holds up to contempt any person or class of persons, on account of the creed, religion, color, denomination, nationality or race of such person or class of persons, shall be guilty of a class D misdemeanor." The defendants moved to dismiss the action for lack of subject matter jurisdiction, claiming, inter alia, that the plaintiff lacked standing under article three of the United States constitution because he had failed to allege an injury in fact.[3] See, e.g., *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 157–58, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) ("[t]o establish [a]rticle [three] standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision' ").

The District Court observed in its certification order that, because the plaintiff did not allege that the state has attempted to enforce § 53-37 against him, he must allege that he faces a " 'credible threat of prosecution' " under that statute in order to demonstrate that he has suffered an injury in fact for purposes of article three standing. *Cerame* v. *Lamont*, Docket No. 3:21cv1508 (JCH), 2022 WL 2834632, *2 (D. Conn. July 20, 2022); see *Susan B. Anthony List* v. *Driehaus*, supra, 573 U.S. 159 ("we have held that a plaintiff satisfies the [injury in fact] requirement whe[n] he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but *proscribed by a statute*, and there exists a credible threat of prosecution thereunder" (emphasis added; internal quotation marks omitted)). Because the parties disagree as to whether the speech alleged in the plaintiff's complaint is proscribed by § 53-37, and because neither this court nor the Appellate Court has interpreted § 53-37, the District Court certified to this court the question of whether the statute applies to the plaintiff's alleged speech. *Cerame* v.

*Lamont*, supra, *3.

In his complaint, the plaintiff alleges that he engages in the following speech: "With his closest and dearest friends . . . to express comradery and as part of play," he "ridicule[s] others on the basis of their race, religion, creed, color, nationality, or denomination," and sometimes he does so in open forums or on the Internet; he ridicules or holds up to contempt "American national[s]" and persons of Italian heritage; "[i]n his personal life," he criticizes and ridicules Scientology and religious practices he deems "harmful to society"; in advising others on free speech rights, he sometimes uses "racial slurs or impolite terms for individuals of certain religious denominations"; and he republishes and adopts as his own, orally or in video clips, material of comedians ridiculing others "on the basis of race, religion, creed, color, denomination, or nationality." (Emphasis omitted.)

The issue presented, whether § 53-37 applies to such speech, presents a question of statutory interpretation, over which we exercise plenary review. See, e.g., *Wind Colebrook South, LLC* v. *Colebrook*, 344 Conn. 150, 161, 278 A.3d 442 (2022). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Winakor* v. *Savalle*, 343 Conn. 773, 781, 276 A.3d 407 (2022).

The defendant contends that, in restricting the application of § 53-37 to speech by one's "advertisement," the legislature's intent was to limit the statute's scope to commercial speech. The plaintiff conceded during oral argument before this court that the defendant's definition—that the term "advertisement," as used in § 53-37, is limited to the marketing or sale of goods, products, or services—is "historically correct, vis-à-vis how the statute was written in 1917."[4] For the reasons that follow, we conclude that § 53-37 does not apply to the speech alleged in the plaintiff's complaint.

Our analysis begins with the language of § 53-37. The statute prohibits the ridicule or holding up to contempt, *by one's advertisement*, of any person or class of persons on account of creed, religion, color, denomination, nationality, or race. General Statutes § 53-37. It does not criminalize all speech that ridicules persons or holds

them up to contempt on the basis of race and the other listed classifications. Instead, in order to fall within the ambit of § 53-37, a person must ridicule or hold up for contempt a person or class of persons on account of creed, religion, color, denomination, nationality, or race "by his advertisement . . . ." General Statutes § 53-37. The key question presented, accordingly, is the scope of the phrase "by his advertisement."

Because § 53-37, which originally was enacted as chapter 202 of the 1917 Public Acts and codified at General Statutes (1918 Rev.) § 6210, does not define the term "advertisement," it is appropriate to consult contemporaneous dictionary definitions. See, e.g., *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 697, 258 A.3d 1268 (2021) ("in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage"); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language").

Contemporaneous dictionary definitions narrow the meaning of the term "advertisement" to a notice, particularly a paid notice, communicated through the public media available in the early twentieth century. One such dictionary defines "advertisement" as "[a] notice or an announcement made public by handbill, placard, or similar means, or, as formerly, by proclamation, as by a town crier; specifically, a paid notice of any kind inserted in a newspaper or other public print." 1 The Century Dictionary and Cyclopedia (Rev. & Enlarged Ed. 1911) p. 88. A second dictionary likewise defines "advertisement" as "[n]otice given in a manner designed to attract public attention; information communicated to the public, or to an individual concerned, by means of handbills or the newspaper." Black's Law Dictionary (2d Ed. 1910) p. 43. Yet another defines the term as "[a] public notice, [especially] in public print." Webster's Collegiate Dictionary (3d Ed. 1916) p. 17.

The defendant contends that the use of the term "advertisement" in other statutes in the 1918 revision of the General Statutes demonstrates that the legislature used the term in a narrow sense to refer specifically to commercial speech. Our review reveals that the use of the term in other statutes supports the conclusion that the legislature intended to restrict the meaning of "advertisement" to commercial speech.

As the defendant observes, the legislature used the term "advertisement" when referring both to the posting or distribution of material through media common to commercial speech in the early twentieth century and to any media, such as signage, presenting goods or services for sale, thus suggesting that it viewed the term to refer to commercial speech. See, e.g., General Statutes (1918 Rev.) § 3024 ("[n]o person shall display

any advertisement containing more than four square feet upon real property other than the property upon which the goods advertised are manufactured or offered for sale, or upon which the business advertised is carried on in whole or in part, until such person shall secure from the superintendent of state police a license to display such advertisement"); General Statutes (1918 Rev.) § 6516 (proscribing any "person, firm, corporation or association, or employee thereof" from knowingly making "any false statement in any advertisement published in a newspaper or circular, or on any card, sign, bill board, label *or other advertising medium* concerning the nature, quality, method of production or manufacture, or cost of any goods or merchandise offered for sale" (emphasis added)).

Statutes at the time also frequently included the term "advertisement" as one among multiple terms in a disjunctive list. See, e.g., General Statutes (1918 Rev.) § 6299 ("[e]very person who shall wilfully destroy or deface any advertisement, handbill, poster or notice, upon any private billboard, shall be fined"); General Statutes (1918 Rev.) § 6467 (statute fining "[a]ny person who in any manner for exhibition or display, puts or causes to be placed any inscription, picture, design, device, symbol, name, advertisement, word, character, mark or notice upon any flag . . . of the United States or state flag of this state"). As the defendant notes, the inclusion of the term "advertisement" in these disjunctive lists suggests that the legislature understood an advertisement to be "distinct from a broader array of speech."

We observe, however, that General Statutes (1918 Rev.) §§ 673 and 674 employ a related term, "advertising," in the context of election law. Section 673 allowed a candidate for public office to "pay his own expenses for postage, telegrams, telephoning, stationery, printing, the advertising in or distribution of newspapers being excepted, expressage and traveling . . . ." General Statutes (1918 Rev.) § 673. Section 674 authorized a political campaign's "treasurer or political agent" to pay expenses, including for the "advertising" of political meetings and parades. General Statutes (1918 Rev.) § 674. These statutes suggest that, in some circumstances, the legislature understood the term "advertisement" to extend beyond purely commercial speech. The legislature's use of the term "advertising" in this distinct manner leads us to conclude that the phrase "by his advertisement" in § 53-37 does not plainly and unambiguously limit the scope of the statute to commercial speech.

Any doubt regarding the legislature's intent is removed by an examination of the circumstances giving rise to the passage of chapter 202 of the 1917 Public Acts, titled "An Act Concerning Discrimination at Places of Public Accommodation."[5] Contemporaneous

newspaper articles reveal that the legislation was proposed to target a specific, discriminatory commercial practice: the posting of signs outside a business establishment, especially places of public accommodation or amusement, indicating that members of certain ethnic, racial, or religious groups were not welcome.[6] See, e.g., "Senate Business," Meriden Daily Journal, January 23, 1917, p. 1 (stating that Senator Frederic Bartlett's proposed measure would impose fine and/or imprisonment for "discrimination against any nationality, sect, creed or class in places of public accommodation or amusement"); "Would Abolish Discrimination Notice Custom: Bartlett Introduces Bill to Ban 'No __ Wanted' Literature," Bridgeport Evening Farmer, January 23, 1917, p. 1 (noting that proposed legislation would prohibit "the posting of signs, or advertising by hotels, barber shops, etc., which discriminate against any sect, color or nationality"). This uncontroverted evidence demonstrates that § 53-37 was not intended to encompass the type of personal, noncommercial speech alleged in the plaintiff's complaint.

The answer to the certified question is: No.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Robinson and Justices McDonald, D'Auria, Mullins, Ecker and Alexander. Although Justice McDonald was not present at oral argument, he has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] Consistent with our authority under § 51-199b (k), we have slightly reformulated the certified question posed by the District Court: "Does the speech alleged in [the plaintiff's] [c]omplaint (paragraphs 13–18) come within the scope of the phrase 'by his advertisement' as that phrase is used in [§] 53-37 . . . ?" *Cerame* v. *Lamont*, Docket No. 3:21cv1508 (JCH), 2022 WL 2834632, *7 (D. Conn. July 20, 2022).

[2] When the plaintiff filed his complaint on November 10, 2021, Richard J. Colangelo, Jr., was the chief state's attorney for Connecticut. In its certification order, the District Court took judicial notice that, "on March 31, 2022, Colangelo retired and, on May 12, 2022 . . . Griffin assumed the role." *Cerame* v. *Lamont*, Docket No. 3:21cv1508 (JCH), 2022 WL 2834632, *1 n.1 (D. Conn. July 20, 2022). The District Court also observed that the plaintiff had withdrawn the action as to the governor and that the parties disputed whether Griffin was a proper party to the action. Id., *2 n.2. In the interest of simplicity, we refer in this opinion to Griffin as the defendant.

[3] The defendant also claimed that the eleventh amendment to the United States constitution barred the action.

[4] The plaintiff argues that, because § 53-37 has never been enforced against commercial speech, this court should rely on anecdotal instances of its alleged enforcement against noncommercial speech in construing the statute. Even if we assume that the plaintiff is correct regarding the statute's enforcement, such enforcement is irrelevant to discerning the intent of the legislature, which is the sole task of statutory construction. See, e.g., *Wind Colebrook South, LLC* v. *Colebrook*, supra, 344 Conn. 161. As we have recently held, and the defendant reminds us in his supplemental authority letter; see Practice Book § 67-10; "for purposes of determining legislative intent . . . the past practice of prosecutors is not a relevant factor under § 1-2z . . . ." *State* v. *Douglas C.*, 345 Conn. 421, 455, 285 A.3d 1067 (2022). The plaintiff offers no theory as to how the alleged instances of enforcement reveals legislative intent and admitted during oral argument that he was unaware of any case in which an individual charged with or convicted of violating § 53-37 claimed that the statute violated that individual's free speech rights. Moreover, the plaintiff does not look to the statutory language or, to the extent that such language is ambiguous, to the statute's legislative history

and other relevant extratextual resources to discern the statute's scope.

[5] As the defendant points out, § 53-37 has remained largely unchanged since its passage in chapter 202 of the 1917 Public Acts. The sole substantive amendment to the statute was in 2012, when the legislature reclassified various misdemeanor offenses. At that time, the offense set forth in § 53-37 was redefined as a class D misdemeanor. See Public Acts 2012, No. 12-80, § 100.

[6] This court may take judicial notice of newspaper articles and has relied on such sources as evidence of legislative intent when appropriate. See, e.g., *Mahoney* v. *Lensink*, 213 Conn. 548, 562 and n.20, 569 A.2d 518 (1990).

––––––––––––––––––––––––––––––––