******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SERAMONTE ASSOCIATES, LLC *v.*
TOWN OF HAMDEN
(SC 20571)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Alexander, Js.

### *Syllabus*

Pursuant to statute (§ 12-63c (a)), an owner of real property used primarily for the purpose of producing rental income may be required to "annually submit to the assessor not later than the first day of June" certain income and expense information for such property.

Pursuant further to statute (§ 12-63c (d)), an owner who fails to submit the information required by § 12-63c (a) "shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year."

The plaintiff, who owns certain real property in the town of Hamden, appealed to the trial court from the decision of the defendant town's board of assessment appeals, which upheld the assessment, pursuant to § 12-63c (d), of a 10 percent penalty against the plaintiff's property for the plaintiff's purportedly late submission of certain 2015 income and expense information pursuant to § 12-63c (a). The plaintiff had mailed the information on May 31, 2016, but the assessor did not receive it until June 2, 2016, one day after the June 1 deadline set forth in § 12-63c (a). The trial court upheld the board's decision, granted the town's motion for summary judgment, and rendered judgment for the town, concluding that the penalty was not improperly imposed because the word "submit," as used in § 12-63c (a), required that the assessor receive the information by June 1. The Appellate Court affirmed the trial court's judgment, concluding that, when viewed in the context of other tax statutes, the use of the word "submit" in § 12-63c (a) unambiguously required delivery of the information to the assessor by June 1. On the granting of certification, the plaintiff appealed to this court, claiming, inter alia, that the term "submit" in § 12-63c (a) means "to send" and that the Appellate Court, therefore, incorrectly had concluded that the term "submit" required that the assessor receive the income and expense information by June 1.

*Held* that the Appellate Court correctly concluded that the word "submit," as used in § 12-63c (a), required that the assessor receive the plaintiff's income and expense information by June 1, and, accordingly, the assessor's imposition of the 10 percent penalty under § 12-63c (d) was not improper:

Because the word "submit" was not defined in § 12-63c (a) or in the broader statutory scheme, this court looked to dictionary definitions in order to understand its ordinary meaning, and those definitions indicated that the process of submission is not considered complete in many contexts until the information is delivered to the recipient, and a reading of § 12-63c as a whole confirmed that the legislature's use of "submit" in the context of that statute unambiguously required the receipt, rather than the mere sending, of the income and expense information by June 1.

Although the plaintiff claimed that the fact that subsection (c) of § 12-63c used the word "receipt" and subsections (a) and (d) of that statute used "submit" suggested that the legislature must have intended those two words to have different meanings, a closer reading of § 12-63c (c) supported the opposite conclusion, as the phrase "receipt of information" in § 12-63c (c) is followed directly by the phrase "as required under subsection (a)," thus indicating that § 12-63c (a) requires receipt rather than mere sending.

Construing the word "submit" to require receipt of the information produced a more harmonious result with this court's case law suggesting that the common usage of the word "submit" contemplates not only transmission but receipt, as well, and a conclusion that § 12-63c (a)

requires only sending or postmarking the information by June 1 could lead to unworkable results insofar as it would place the burden on the assessor to locate any information that is delayed or lost in the mail and would provide no incentive to the property owner to assist in locating or replacing such missing information.

In the present case, the plaintiff did not "submit" its income and expense information to the assessor when it placed that information in the hands of the postal service on May 31, 2016, but, rather, the process of submission was complete only when the assessor received the information on June 2, 2016, one day after the statutory deadline imposed by § 12-63c (a).

(*Two justices concurring separately in one opinion*)

Argued May 4—officially released October 18, 2022

*Procedural History*

Appeal from the decision of the defendant's board of assessment appeals denying the plaintiff's appeal from a penalty imposed by the defendant's assessor and added to tax assessments on certain of the plaintiff's real properties, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *S. Richards, J.*, granted the defendant's motion for summary judgment and motion to strike, denied the plaintiff's motion for summary judgment, and rendered judgment for the defendant, from which the plaintiff appealed to the Appellate Court, *Bright, C. J.*, and *Alvord* and *Oliver, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Brenden P. Leydon*, for the appellant (plaintiff).

*Zachary J. Phillipps*, with whom, on the brief, was *Adam J. Blank*, for the appellee (defendant).

*Opinion*

KAHN, J. The sole question in this certified appeal is whether General Statutes § 12-63c (a), which requires the owners of certain rental property to "submit" income and expense information to their municipal tax assessor "not later than the first day of June," is satisfied when that information is postmarked but not delivered by that date. The plaintiff, Seramonte Associates, LLC, appeals from the judgment of the Appellate Court, which affirmed the judgment of the trial court rendered in favor of the defendant, the town of Hamden. On appeal, the plaintiff claims that the Appellate Court erred in determining that the word "submit" in § 12-63c (a) unambiguously requires that an assessor receive income and expense forms by June 1. We agree with the Appellate Court's construction of the relevant statutory text and, accordingly, affirm its judgment.

The record reveals the following undisputed facts and procedural history relevant to our resolution of this appeal. The plaintiff owns three rental properties located on Mix Avenue in Hamden. The plaintiff used these three properties for the primary purpose of producing rental income during the 2015 calendar year. On February 1, 2016, the assessor for the defendant assessed 520 Mix Avenue at $15,683,080, 609 Mix Avenue at $2,927,890, and 617 Mix Avenue at $10,521,560. On or before April 15, 2016, the assessor provided the plaintiff with separate forms on which to disclose the plaintiff's income and operating expenses for each of these three properties. Pursuant to § 12-63c (a), the plaintiff was required to complete and "submit" these forms by June 1, 2016. The assessor included a cover letter with each set of forms containing the following statement: "It should be clearly understood that if the attached report is not completed and submitted to the [a]ssessor's [o]ffice by June 1, 2016, it will result in a 10 [percent] penalty being applied to your assessment per [§ 12-63c (d)]." (Emphasis omitted.) The cover letter also stated that "[s]ubmission means this form is physically in the [a]ssessor's office by 4:30 on June 1, 2016, faxes, emails and postmarks WILL NOT BE ACCEPTED."[1] (Emphasis omitted.)

The plaintiff mailed the income and expense forms to the assessor via the United States Postal Service on May 31, 2016. The assessor received the forms on June 2, 2016, one day after the June 1 deadline set forth in § 12-63c (a). The assessor then imposed a 10 percent penalty on the plaintiff pursuant to § 12-63c (d), amounting to $132,145.16.[2]

The plaintiff subsequently commenced the present action pursuant to General Statutes § 12-119, alleging that the assessor's valuation of the three properties and the 10 percent penalty imposed under § 12-63c (d) were excessive. On February 27, 2017, the plaintiff withdrew

its excessive valuation claim and, instead, continued to pursue only its claim that the 10 percent penalty was improper. The plaintiff simultaneously appealed from the assessment of the penalty to the defendant's board of assessment appeals (board), which conducted a hearing on March 2, 2017, and denied the plaintiff's appeal on March 21, 2017.

On May 1, 2017, the plaintiff filed an amended complaint to include a challenge to the board's decision.[3] The defendant filed a motion for summary judgment relating to the validity of the 10 percent penalty on December 21, 2017. In support of that motion, the defendant argued that the penalty was properly imposed on the plaintiff because the assessor did not receive the income and expense forms by June 1, 2016, as required under § 12-63c (a). The plaintiff, in its motion for summary judgment, argued that the penalty was improper because the statute only requires it to "submit" the materials, which, according to the plaintiff, means "to send" the materials. Thus, the plaintiff argued that its timely mailing was sufficient under the statute.

On February 5, 2019, the trial court granted the defendant's motion for summary judgment and denied the plaintiff's motion for summary judgment. In its memorandum of decision on those motions, the trial court determined that the word "submit," as it is utilized in § 12-63c (a), "is susceptible to two reasonable interpretations." Looking to various dictionary definitions of that term, the trial court concluded that the word "submit" "could mean the [assessor] must receive the forms by June 1 or that the forms must be mailed to the [assessor] by June 1." The trial court then looked to extratextual evidence of the word's meaning and resolved the ambiguity in favor of the defendant. Specifically, the trial court noted that, although the legislative history does not make it clear what the word "submit" means, it was clear that the purpose of the penalty was to "ensure that municipal assessors could accurately and equitably assess the value of commercial properties . . . ." The trial court also looked to this court's decision in *PJM & Associates, LC* v. *Bridgeport*, 292 Conn. 125, 971 A.2d 24 (2009), a case in which this court held that the purpose of the 10 percent penalty under § 12-63c (d) "is to compel the submission of information to assist the assessor in performing his duties." Id., 145. The trial court further held that construing the word "submit" to require receipt would ensure uniformity in the tax process and consistency in enforcing the tax code, whereas the plaintiff's interpretation would frustrate the statute's fundamental purpose. The trial court also relied on a prior Superior Court decision that interpreted the language of § 12-63c to mean that an assessor must receive the tax forms by June 1. See *MSK Properties, LLC* v. *Hartford*, Superior Court, judicial district of New Britain, Docket No. CV-15-6029158-S (July 3, 2017) (64 Conn. L. Rptr. 747, 753). Ultimately, the trial

court rendered judgment in the defendant's favor, concluding that the word "submit," as used in § 12-63c (a) "means that the [assessor] must receive the tax forms by June 1 of each year."

The plaintiff subsequently appealed from the trial court's judgment to the Appellate Court. *Seramonte Associates, LLC* v. *Hamden*, 202 Conn. App. 467, 468, 246 A.3d 513 (2021). In that appeal, the plaintiff claimed that the trial court erred in its interpretation of § 12-63c by reading the word "submit" to require receipt of the income and expense forms by the assessor. Id., 469. The plaintiff renewed its assertion that the ordinary meaning of the word "submit" in § 12-63c means "to send . . . ." (Internal quotation marks omitted.) Id., 474–75.

The Appellate Court affirmed the trial court's judgment on a different basis. The Appellate Court noted that the trial court, in concluding that the word "submit" was ambiguous based on its dictionary definition alone, failed to consider, as required under General Statutes § 1-2z, both the text of the statute and its relationship to other statutes. Id., 477. On the basis of its own examination of tax statutes, the Appellate Court concluded that, when the legislature intends for the date of mailing or postmarking to be the date of submission, it includes the phrase "or postmarked . . . ." (Internal quotation marks omitted.) Id. The court held that, viewed in the context of other tax statutes, the word "submit," as used in § 12-63c (a), unambiguously requires delivery of the forms by June 1. (Internal quotation marks omitted.) Id., 479–80. Because there was no dispute that the plaintiff's forms were not delivered to the assessor by June 1, 2016, the court concluded that the trial court properly granted the defendant's motion for summary judgment. Id., 480. This court subsequently granted in part the plaintiff's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Did the Appellate Court properly construe the phrase 'who fails to submit such information,' as it is used in . . . § 12-63c (d)?" *Seramonte Associates, LLC* v. *Hamden*, 336 Conn. 923, 246 A.3d 492 (2021).[4]

In the present appeal, the plaintiff claims that the Appellate Court erred in concluding that the phrase "submit . . . not later than the first day of June" in § 12-63c (a) requires the assessor's receipt of the income and expense forms by that date, and not simply mailing or postmarking. The plaintiff urges that the word "submit" means "to send" and requests that the Appellate Court's judgment be reversed. The defendant, in response, claims that the Appellate Court properly interpreted the word "submit" to require that the assessor receive the income and expense forms by June 1, and urges affirmance. For the reasons that follow, we agree with the Appellate Court that § 12-63c requires

receipt of the income and expense information by June 1.

Because our review of the Appellate Court's legal determination turns on a question of statutory interpretation, we exercise plenary review. See, e.g., *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 416, 195 A.3d 664 (2018). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) Id. "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

We begin our analysis with the language of § 12-63c. Section 12-63c (d) provides in relevant part: "Any owner of such real property required to submit information to the assessor in accordance with subsection (a) of this section for any assessment year, who *fails to submit such information as required under said subsection* (a) . . . shall be subject to a penalty equal to a ten per cent increase in the assessed value of such property for such assessment year. . . ." (Emphasis added.) Section 12-63c (a), in turn, provides in relevant part: "In determining the present true and actual value in any town of real property used primarily for purposes of producing rental income, the assessor . . . may require in the conduct of any appraisal of such property pursuant to the capitalization of net income method, as provided in section 12-63b, *that the owner of such property annually submit to the assessor not later than the first day of June*, on a form provided by the assessor not later than forty-five days before said first day of June, the best available information disclosing the actual rental and rental-related income and operating expenses applicable to such property. . . ." (Emphasis added.)

Because the word "submit" is not defined in § 12-63c (a) or in the broader statutory scheme, we begin by looking to the dictionary definition of the word "submit" in order to understand its ordinary meaning. See, e.g., *Maturo* v. *State Employees Retirement Commission*, 326 Conn. 160, 176, 162 A.3d 706 (2017); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be

construed and understood accordingly"). Dictionary definitions contemporaneous with the statute's enactment in 1984 define the word "submit" as "to commit to another" and "to make available . . . ." Webster's New Collegiate Dictionary (1981) p. 1152. See generally *Maturo* v. *State Employees Retirement Commission*, supra, 176 ("[w]hen a term is not defined in a statute, we begin with the assumption that the legislature intended the word to carry its ordinary meaning, as evidenced in dictionaries in print at the time the statute was enacted"). Although the concept of submission undoubtedly requires the holder of information to transmit it, by mail or some other means, the process of submission is not considered complete in many contexts until the information is delivered to the recipient.[5] Modern definitions are concordant and define the word "submit" as "to *present* or *propose* to another for review, consideration, or decision . . . *to deliver formally* . . . ." (Emphasis added.) Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 1244. Presentation, proposal, or delivery for review, consideration, or decision, of course, necessitates receipt in addition to transmission.[6]

The plaintiff, however, also correctly notes that more recent dictionaries have defined the word "submit" as meaning "to send." Webster's Third New International Dictionary (1993) p. 2277 (defining "submit" as "to send or commit for consideration, study, or decision"). Although we acknowledge that the word "submit," based on such dictionary definitions alone, may well mean mere sending in other contexts, a reading of § 12-63c as a whole indicates that the legislature's use of that word in this specific context unambiguously requires receipt. See, e.g., *Planning & Zoning Commission* v. *Freedom of Information Commission*, 316 Conn. 1, 12–13, 110 A.3d 419 (2015) ("[i]t is a basic tenet of statutory construction that [w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation" (internal quotation marks omitted)).

Section 12-63c (c) provides in relevant part: "If upon *receipt of information as required under subsection* (*a*) *of this section* the assessor finds that such information does not appear to reflect actual rental and rental-related income or operating expenses related to the current use of such property, additional verification concerning such information may be requested by the assessor. . . ." (Emphasis added.) The plaintiff relies on the use of different words in the same statute, "submit" in subsections (a) and (d) of § 12-63c, and "receipt" in § 12-63c (c), as proof that the legislature intended those two words to have different meanings. Although we agree with the general proposition that "[t]he use of . . . different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it

intended the terms to have different meanings"; (internal quotation marks omitted) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008); a closer reading of § 12-63c (c), in fact, supports the opposite conclusion. The phrase "receipt of information" in § 12-63c (c) is followed directly by the phrase "as required under subsection (a) . . . ." General Statutes § 12-63c (c). The verb "required" is tied clearly to the noun "receipt."[7] The introductory phrase in subsection (c), thus, was plainly intended to convey the message that subsection (a) requires receipt. As a result, § 12-63c (c) confirms, rather than undermines, a conclusion that the word "submit," as it was employed by our legislature in § 12-63c (a), was intended to require something more than transmission alone.

Further, we observe that construing the word "submit" in § 12-63c (a) to require receipt of the income and expense reports by the assessor on June 1 produces a more harmonious result with our existing case law. See *PJM & Associates, LC* v. *Bridgeport*, supra, 292 Conn. 142 ("[u]nder . . . [§ 12-63c (d)], a penalty may be imposed if the required information never reaches the assessor because the property owner does not provide the information"); see also, e.g., *State* v. *Jones*, 314 Conn. 410, 418–19, 102 A.3d 694 (2014) (holding that phrase "shall *submit* to the jury . . . [a]ll exhibits received in evidence" not only requires that trial court "send" exhibits to jury but also that jury has "a meaningful opportunity to study and consider an exhibit during its deliberations" (emphasis added; internal quotation marks omitted)).[8] Although *PJM & Associates, LC*, did not specifically address the meaning of the word "submit" in § 12-63c (a), the underlying premise of that case is that it is the lack of receipt of the information that triggers the penalty. See *PJM & Associates, LC* v. *Bridgeport*, supra, 142–43. This case law constitutes persuasive authority that the common usage of the word "submit" contemplates not only transmission but also receipt. In the present case, the assessor is not in a position to study and consider income and expense information until it is received, not merely postmarked.

On the basis of our review of the text of § 12-63c, we conclude that the word "submit" unambiguously requires that the income and expense information be received by the assessor by June 1. The plaintiff's citations to various other statues are insufficient to alter our conclusion in this regard. The plaintiff argues that the legislature would have used the phrase "received by" or some other sufficiently clear language if it had intended for the word "submit" under § 12-63c (a) to require something more than mailing or postmarking. The plaintiff also argues that, as in § 12-63c (c), the legislature's use of "submit" and "received by" in other tax statutes indicates that submission and receipt have two inherently different meanings. The plaintiff is, of

course, correct to note that certain statutes contain an express requirement that a form must be "received by" a certain date and that still other legislative enactments use both "submit" and "received by" within the same provision. See, e.g., General Statutes § 9-391 (a) ("[i]f such a certificate of a party's endorsement is not *received by* the clerk of the municipality by such time, such certificate shall be invalid" (emphasis added)); General Statutes § 12-129c (a) ("[s]uch taxpayer may *submit* such application to the assessor by mail, provided it is *received by* the assessor not later than April fifteenth in the assessment year with respect to which such tax relief is claimed" (emphasis added)); General Statutes § 12-170w (a) ("[s]uch taxpayer may *submit* such application to the assessor by mail, provided it is *received by* the assessor not later than April fifteenth in the assessment year with respect to which such tax relief is claimed" (emphasis added)). We are not persuaded.

The plaintiff's reliance on these statutes is undercut by the legislature's explicit use of the terms "postmark" and "postmarked" in other statutes. As the Appellate Court aptly noted, there are numerous statutes in which the legislature also expressly states that postmarking is sufficient to render a filing timely. See, e.g., General Statutes § 12-41 (e) (3) ("any declaration [of personal property] received by the municipality to which it is due that is in an envelope bearing a *postmark* . . . showing a date within the allowed filing period shall not be deemed to be delinquent" (emphasis added)); General Statutes § 12-129 ("Any person, firm or corporation who pays any property tax in excess of the principal of such tax . . . may make application in writing to the collector of taxes for the refund of such amount. Such application shall be delivered *or postmarked* by the later of [three events]." (Emphasis added.)); General Statutes § 12-146 ("[n]o tax or installment thereof shall be construed to be delinquent under the provisions of this section if . . . the envelope containing the amount due as such tax or installment, as received by the tax collector of the municipality to which such tax is payable, bears a *postmark* showing a date within the time allowed by statute for the payment of such tax or installment" (emphasis added)). Thus, the legislature's use of the phrase "received by" in the statutes cited by the plaintiff is not dispositive.

Indeed, there are also statutes that use both the word "submit" and the word "postmark" in the same statutory section. See, e.g., General Statutes § 22a-449n (e) (1) ("[o]n or after July 1, 2001, an owner shall *submit* to the commissioner an application that is *postmarked* no later than December 31, 2001" (emphasis added)). Accordingly, the plaintiff's reliance on statutes using the term "received by," alone or in conjunction with the word "submit," does not alter our conclusion that the word "submit," as it is used in the specific context

of § 12-63c (a), unambiguously requires receipt of information on or before June 1.[9]

A conclusion that the term "submit" in § 12-63c (a) simply requires sending or postmarking has the potential to create unworkable results. See, e.g., *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 723, 104 A.3d 671 (2014) ("[w]e must interpret the statute so that it does not lead to absurd or unworkable results" (internal quotation marks omitted)). Under the plaintiff's reading, the property owner's burden to provide income and expense information to the assessor under § 12-63c would end at the mailbox. Under this interpretation, if a property owner postmarks the required forms, and they are subsequently delayed or lost in the mail, the burden would be on *the assessor* to locate that data. If a postmark is all that is required, a property owner in such a case could claim that its burden under § 12-63c (a) had already been satisfied, even if the assessor never receives the forms. Such a construction would provide absolutely no incentive to a property owner either to ensure that the required information is, in fact, received by the assessor or to assist an assessor in locating or replacing the information that had been lost in transit.[10] Construing "submit" to require *receipt* of the income and expense forms no later than June 1 ensures that municipal assessors obtain necessary information in a timely fashion.[11]

On the basis of the foregoing, we conclude that the word "submit" in § 12-63c (a) unambiguously requires that the income and expense information be received by the assessor by June 1. See, e.g., *Connecticut Housing Finance Authority* v. *Alfaro*, 328 Conn. 134, 142, 176 A.3d 1146 (2018) ("[A]mbiguity exists only if the statutory language at issue is susceptible to more than one plausible interpretation. . . . In other words, statutory language does not become ambiguous merely because the parties contend for different meanings." (Internal quotation marks omitted.)). In the present case, therefore, the plaintiff did not "submit" its income and expense information when it placed that information in the hands of the United States Postal Service on May 31, 2016. The process of submission was not complete until the assessor received the forms on June 2, 2016, one day after the statutory deadline imposed by § 12-63c (a). Accordingly, the plaintiff failed to submit the required income and expense information under § 12-63c (d), and the 10 percent penalty imposed on the plaintiff pursuant to § 12-63c (d) was valid. The Appellate Court, therefore, properly affirmed the judgment of the trial court.

The judgment of the Appellate Court is affirmed.

In this opinion ROBINSON, C. J., and D'AURIA, MULLINS and ALEXANDER, Js., concurred.

[1] When the plaintiff did not request an extension by May 1, 2016, to submit the required information, as permitted under § 12-63c (a), the assessor

informed the plaintiff in writing that it had not yet received the plaintiff's income and expense forms. In these letters to the plaintiff, dated May 24, 2016, the assessor reiterated that the forms must be physically in the assessor's office by June 1, 2016, and that postmarks would not be accepted.

[2] The new assessments for each of the plaintiff's properties were $17,251,388 for 520 Mix Avenue, $3,220,679 for 609 Mix Avenue, and $11,573,716 for 617 Mix Avenue.

[3] The plaintiff's amended complaint also alleged that the 10 percent penalty violated the prohibitions on excessive fines set forth in the eighth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. The trial court subsequently granted the defendant's motion to strike those allegations from the complaint. The plaintiff appealed from the trial court's ruling on the motion to strike. *Seramonte Associates, LLC* v. *Hamden*, 202 Conn. App. 467, 480, 246 A.3d 513 (2021). The Appellate Court upheld the trial court's ruling, concluding that the eighth amendment to the United States constitution and article first, § 8, of the Connecticut constitution did not apply. Id., 483; see id., 486. The plaintiff sought, but was not granted, certification from this court to appeal from the judgment of the Appellate Court with respect to its claim that the 10 percent penalty imposed under § 12-63c (d) was excessive under the federal and state constitutions.

[4] The plaintiff argues that, notwithstanding this court's denial of certification on the issue, we must still consider its excessive fines claims under the doctrine of constitutional avoidance. We disagree. It is well settled in our case law that a party may present only those issues for which certification has been granted. See Practice Book § 84-9; see also, e.g., *State* v. *Turner*, 334 Conn. 660, 686 n.13, 224 A.3d 129 (2020). Construing the word "submit" to require sending would not prevent a future property owner from alleging, upon late postmarking, that the 10 percent penalty is excessive. The same would be true under any construction of the word "submit." Accordingly, the plaintiff's reliance on the doctrine of constitutional avoidance in this case is unavailing.

[5] Although the plaintiff correctly notes that the word "submit" is derived in part from a Latin word, "submittere," which means "to send," it is the present meaning of that word that must govern. See General Statutes § 1-1 (a). Such a reading of the word "submit" is further supported by common parlance. Submitting a job application, for example, requires more than mere transmission. If an applicant's materials never reach the employer, and the employer is therefore unable to use or consider that information, one would not say that the materials had, in fact, been submitted.

[6] Dictionary definitions of "present" and "propose," in turn, emphasize that the transmitted information must typically be delivered to the intended recipient. The definition of "present" is "to bring or introduce *into the presence of someone* . . . ." (Emphasis added.) Merriam-Webster's Collegiate Dictionary, supra, p. 982. "Propose" is defined as "to *set before* the mind . . . ." (Emphasis added.) Id., p. 997.

[7] The only other noun in the phrase "upon receipt of information as required" is, of course, "information." General Statutes § 12-63 (c). Had the legislature intended "information" to be the object of the verb "required," the introductory phrase in § 12-63c (c) would have read "upon receipt of *the* information required . . . ." The legislature's omission of the definite article "the" before the word "information" compels the grammatical conclusion that the noun "receipt" is the object of the verb "required."

[8] The plaintiff's reliance on *In re Lambirth*, 5 Cal. App. 5th 915, 211 Cal. Rptr. 3d 104 (2016), is likewise unavailing. In that case, the California Court of Appeal for the Sixth District held that the meaning of the word "submit" entailed "sending rather than receipt" because the prison delivery rule at issue provided that "an inmate's delivery of a document to prison authorities is deemed a constructive *filing* of the document." (Emphasis in original.) Id., 923. The court also noted that its construction of the word "submit" was "consistent with the directions on the [California Department of Corrections and Rehabilitation] form 602 (Inmate/Parolee Appeal), which tell the inmate, '[y]ou must *send* this appeal and any supporting documents to the [a]ppeals [c]oordinator . . . within [thirty] calendar days' . . . ." (Emphasis in original.) Id. As a result, *In re Lambirth* is not instructive.

[9] The plaintiff also argues that judgment in its favor is compelled as a matter of law because tax statutes must be strictly construed in favor of the taxpayer. Because we conclude that the statute's plain meaning is unambiguous, we do not address the plaintiff's assertion that this court must resolve ambiguities in tax statutes in favor of the taxpayer; nor do we

conclude that § 12-63c is, in fact, a tax statute. See, e.g., *Key Air, Inc.* v. *Commissioner of Revenue Services*, 294 Conn. 225, 241, 983 A.2d 1 (2009) (presumption of strict construction in favor of taxpayer does not apply when statute is not ambiguous). Similarly, the plaintiff argues that the statute's penalty provision requires us to strictly construe the statute in its favor under the rule of lenity. Even if we were to assume that the rule of lenity applies to the imposition of the penalty authorized by § 12-63c (d), there would be no need to apply it to the present case because we conclude that the meaning of the word "submit" is unambiguous. *State* v. *Ledbetter*, 240 Conn. 317, 331 n.12, 692 A.2d 713 (1997) (rule of lenity "comes into play only if the statute remains ambiguous after all sources of legislative intent have been explored"); see also *Moskal* v. *United States*, 498 U.S. 103, 108, 111 S. Ct. 461, 112 L. Ed. 2d 449 (1990) (rule of lenity is reserved for those situations "in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute" (emphasis omitted; internal quotation marks omitted)).

[10] The fact that postmark deadlines may prove to be workable—or, indeed, even preferable—in various other contexts does not alter the fact that the adoption of such a rule in this specific setting could well leave municipal assessors without the information necessary to timely comply with the demanding statutory deadlines to which they are subject.

[11] We note that the question of whether the plaintiff's reading of the relevant statutory text "yield[s] absurd or unworkable results" is analytically distinct from the examination of extratextual sources, such as expressions of legislative intent and considerations of broader public policy, that typically follows a determination of textual ambiguity. General Statutes § 1-2z. Although the line between these separate realms may not always be perfectly clear, we believe that these pragmatic concerns properly inform our reading of § 12-63c (a) in the present appeal.