******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STEPHEN C. MCCULLOUGH *v.*
# TOWN OF ROCKY HILL
## (AC 47717)

Elgo, Suarez and Seeley, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment granting the defendant town's motion to strike the plaintiff's substitute complaint seeking declaratory relief with respect to certain real property taxes assessed by the town. He claimed, inter alia, that the court improperly granted the motion to strike the plaintiff's complaint in its entirety. *Held*:

This court dismissed as moot the portion of the plaintiff's appeal challenging the trial court's judgment rendered on the stricken complaint, as this court could not afford the plaintiff any practical relief consistent with the relief requested in his substitute complaint, and the plaintiff failed to demonstrate that his claim was reviewable under the capable of repetition, yet evading review exception to the mootness doctrine.

The trial court did not abuse its discretion in awarding attorney's fees to the town pursuant to the statute (§ 12-140) governing the recovery of reasonable attorney's fees incurred by a municipality in defending a civil action brought as a result of a tax sale, as the plaintiff failed to provide to this court any basis on which to reach a determination that the trial court could not have reasonably concluded that such fees should be awarded.

Argued November 12, 2025—officially released May 19, 2026

*Procedural History*

Action seeking, inter alia, a declaratory judgment determining whether the plaintiff owed real property taxes, interest and lien fees to the defendant, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Knox, J.*, granted the defendant's motion to strike the complaint; thereafter, the court, *Hon. Joseph M. Shortall*, judge trial referee, granted the defendant's motion to strike the plaintiff's substitute complaint and rendered judgment thereon; subsequently, the court, *Hon. Joseph M. Shortall,* judge trial referee, awarded attorney's fees to the defendant, and the plaintiff appealed to this court. *Appeal dismissed in part*; *affirmed*.

*Stephen C. McCullough*, self-represented, the appellant (plaintiff).

*Adam J. Cohen*, for the appellee (defendant).

*Opinion*

SEELEY, J. The self-represented plaintiff, Stephen C. McCullough, appeals from the judgment of the trial court rendered in favor of the defendant, the town of Rocky Hill (town), following the court's granting of the town's motion to strike the plaintiff's substitute complaint in its entirety, which sought declaratory relief with respect to certain real property taxes assessed by the town. On appeal, the plaintiff claims that the court improperly (1) granted the town's motion to strike his substitute complaint in its entirety and (2) awarded the town attorney's fees pursuant to General Statutes § 12-140.[1] We dismiss as moot the portion of the appeal related to the plaintiff's first claim and, with respect to the second claim, affirm the award of attorney's fees.

The following factual background and procedural history are relevant to our resolution of this appeal. The plaintiff acquired title to real property located at 140 Hayes Road in Rocky Hill by way of a quitclaim deed upon the death of his father in 2009. After becoming the owner of the property, the plaintiff failed to pay real estate and property taxes to the town for approximately fourteen years. As a result, the property became the subject of a statutory tax sale by a public auction.[2]

---

[1] General Statutes § 12-140 provides in relevant part: "All reasonable and necessary costs or expenses for necessary advertising, postage on notices, and reasonable sums paid town clerks or other persons for examining records to ascertain encumbrances upon property sold, for preparing notices at the direction of the tax collector, for drafting collector's deeds, for attorney's fees, for all fees and costs incurred by the municipality in defending any civil action brought as a result of a tax sale or an alias tax warrant or which seeks to enjoin or declare unlawful any tax sale or alias tax warrant, for the services of auctioneers, clerks and other persons retained to assist the collector in conducting the tax sale, for filings in the land records, fees paid to any federal, state or local government entity or agency and for any other fees and expenses incurred or otherwise provided by law shall be paid by the delinquent taxpayer or as provided in section 12-157."

[2] Pursuant to the statutory framework for a tax foreclosure sale, within sixty days following a tax sale, the tax collector must provide notice of the sale to the delinquent taxpayer along with "the date the redemption period will expire," which is "not later than six months

The plaintiff filed his initial complaint in the present case on April 17, 2023, seeking, inter alia, a temporary injunction to prevent the town from selling the property at an auction scheduled for April 20, 2023. In his initial complaint, the plaintiff alleged, inter alia, that the town improperly had demanded payment for overdue taxes on the property for the 2009 tax year, when a 2009 tax lien already had been paid and discharged. Specifically, the plaintiff alleged that he had discovered a certificate releasing and discharging the 2009 tax lien but that he

after the . . . sale . . . ." General Statutes § 12-157 (f). "If the sale realizes in an amount in excess of the amount needed to pay all delinquent taxes, interest, penalties, fees, and costs," then the town will hold the excess funds in an interest-bearing escrow account throughout the six month redemption period. General Statutes § 12-157 (i) (1). To redeem a property sold at a tax sale, a delinquent taxpayer must "[pay] to the collector, the amount of taxes, interest and charges which were due and owing at the time of the sale together with interest on the total purchase price paid by the purchaser at the rate of eighteen per cent per annum from the date of such sale plus any taxes and debts owed to the municipality that were not recovered by the sale and any additional charges under section 12-140 . . . ." General Statutes § 12-157 (f). If, at the conclusion of the redemption period, "the property is not redeemed . . . [then] the amount held in escrow may be used to pay the delinquent taxes, interest, penalties, fees and costs on the same or any other property of the taxpayer, including personal property and motor vehicles." General Statues § 12-157 (i) (1) (B). Such fees and costs include, but are not limited to, "[a]ll reasonable and necessary costs or expenses . . . for attorney's fees, for all fees and costs incurred by the municipality in defending any civil action brought as a result of a tax sale or an alias tax warrant or which seeks to enjoin or declare unlawful any tax sale or alias tax warrant . . . [and] shall be paid by the delinquent taxpayer or as provided in section 12-157." General Statutes § 12-140.

The funds remaining after paying off those amounts are then deposited with "the clerk of the court for the judicial district in which the property is located . . . ." General Statutes § 12-157 (i) (1). Within five days, "[t]he tax collector shall . . . provide notice to the delinquent taxpayer, any mortgagee, lienholder, or other encumbrancer"; General Statutes § 12-157 (i) (1); who "may, within ninety days of the date the tax collector paid the moneys to the court, file an application with the court for return of the proceeds." General Statutes § 12-157 (i) (2). After referring the matter to a referee, the trial court shall render "a final judgment determining the amount due to each party," and, if no party appeals, then "the clerk shall send a certified copy of the statement of compensation and of the judgment to the prevailing party or parties . . . which shall, upon receipt thereof, pay such parties the amount due them as compensation." General Statutes § 12-157 (i) (2).

continued to receive automated demand letters for 2009 taxes from the town's tax collector. The plaintiff further alleged that, in 2013, he had made some "low dollar test payments" to learn where payments would be applied by the tax collector. These "low dollar test payments" were applied to the 2008 tax year. The plaintiff alleged that, in 2014, the tax collector began rejecting his partial payments in violation of General Statutes §§ 12-144b and 12-146.

As to the relief requested, the plaintiff sought a declaratory judgment stating that "[t]axes, interest, and lien fees, are not owed by the plaintiff for the 2009 tax year, [or] interest and lien fees since that period of time when the tax collector: (1) was not accepting partial payments as required by statute, and (2) during the time in which any payment would result in 2009 being repaid before such funds would be applied to later tax years. This would result in a liability of interest that was due in 2013 for any tax year after 2009." Further, the plaintiff sought a temporary injunction "ordering that the town . . . [and] its tax collector . . . be prohibited and enjoined from taking part in any auction or sale of real estate belonging to [the plaintiff or his deceased father] at 140 Hayes Road, Rocky Hill . . . including, but not limited to, the published planned auction set for April 20, 2023, at [10] a.m. at Rocky Hill Town Hall, until [the] time of [the] expiration of the appeal period of final judgment of this litigation."

At the time the plaintiff filed his initial complaint, he also filed a separate application for an ex parte temporary injunction to enjoin the tax sale. In his application for an ex parte temporary injunction, the plaintiff alleged that the town used the extrajudicial tax sale process as "an unconstitutional end [runaround] . . . to circumvent the judicial system, as [a prior] foreclosure case [initiated by the town] . . . [had] failed," and that the plaintiff believed that the town had "committed innumerable acts of foul play . . . ." The plaintiff asserted that the injunction should be granted because "there is [a] lack of an adequate remedy at law given the time frame [in

which] the [town] plans to execute [the] proposed extrajudicial proceeding"; he would suffer "great harm" if the injunction were denied; monetary damages could not compensate for the "severe and irreparable harm" that he would suffer by the loss of his childhood home; and it was "extremely likely that [he would] succeed on the merits of his claim."

The town filed a memorandum in opposition to the plaintiff's application for an ex parte temporary injunction on April 17, 2023. In its memorandum, the town argued that the plaintiff had failed to "allege any defect or irregularity in the tax sale procedure." The town further argued that, under General Statutes § 12-159[3] and this court's decision in *Berger* v. *Fitzgerald*, 55 Conn. App. 138, 149, 739 A.2d 287, cert. denied, 251 Conn. 922, 742 A.2d 358 (1999), a person challenging a municipal tax foreclosure sale may obtain an injunction only if the person can show that "(1) the tax collector failed to mail him notice of the sale and that he did not have actual notice of the sale [six months] after it was made, or (2) that the property was not by law liable to be sold to satisfy the tax . . . ." The town argued that "[t]he plaintiff does not dispute that the taxes on his property are seriously delinquent, that the sale notices and other procedures have been followed flawlessly, and that he

[3] General Statutes § 12-159 provides in relevant part: "No act done or omitted relative to the assessment or collection of a tax, including everything connected therewith, after the vote of the community laying the same, up to and including the final collection thereof or sale of property therefor, shall in any way affect or impair the validity of such tax as assessed, collected or sought to be collected or the validity of such sale, unless the person seeking to enjoin or contesting the validity of such sale shows that the collector neglected to provide notice pursuant to section 12-157, to such person or to the predecessors of such person in title, and who had a right to notice of such sale, and that the person or they in fact did not know of such sale within six months after it was made, and provided such property was by law liable to be sold to satisfy such tax. The fact that the collector may have charged or received illegal fees upon such sale shall not impair the sale's validity. If the person contesting such fees shows that illegal fees were charged by the collector, the municipality shall refund such illegal fees together with legal interest from the date of their payment in accordance with section 12-129."

is aware of the pending auction with plenty of time to pay the delinquencies owed." The town contended that, under *Berger*, granting a preliminary injunction when a person such as the plaintiff has actual notice of the tax sale is reversible error.[4] See *Berger* v. *Fitzgerald*, supra, 149–50. The plaintiff filed a reply to the town's objection on April 18, 2023, in which he argued that the town "ha[d] committed over thirty improper, illegal, or judicially unethical acts, most [were] all intentional, and a couple of them [were] felonies."

The court, *Knox, J.*, held a hearing on April 18, 2023, to address the plaintiff's application for a temporary injunction. At the hearing, the plaintiff argued that he was entitled to a declaratory judgment "to find out exactly what" he owed. The plaintiff argued that his "case [was] not one [in which he was] challenging assessments or notice. This [was] basically illegal activity, or rather lack of activity by the town to take payments or apply them to the wrong place." The plaintiff conceded that, as of the time of the hearing, he had not made any payments to the town for taxes owed since sometime in 2015.

The court disagreed with the plaintiff and denied his application for a temporary injunction on the ground that the plaintiff had failed to satisfy the requirements of § 12-159 to enjoin a tax sale. In its order, the court explained that "tax sales are not equitable proceedings but rather statutory proceedings pursuant to General Statutes §§ 12-157 and 12-159." The court concluded

---

[4]Further, the town argued that the plaintiff had adequate remedies at law in the form of administrative procedures that account for a return of illegal fees collected by the tax collector. See General Statutes § 12-159 (contesting amount of tax owed is insufficient to halt tax sale because challenger may request refund of illegal fees from tax collector); see also General Statutes § 12-157 (providing remedy at law through redemption). The town argued that the "plaintiff is currently the *number one most severely tax delinquent property owner in the entire town* . . . . The plaintiff can stop the procedure at any time simply by paying his debt to the town—just like everyone else." (Emphasis in original.) Because the plaintiff had not shown any valid reason to halt the sale of his home for delinquent taxes, the town argued that his request for an injunction should be denied.

that, "[u]nder the statutory provisions applicable to this matter . . . there are two grounds upon which the tax sale can be challenged: **(1)** failure of the tax collector to give notice of the sale and lack of actual notice; and **(2)** 'the property was not by law liable to be sold to satisfy the tax.' . . . Neither is applicable. First, the plaintiff, who does not dispute notice, has actual notice of the pending tax sale by virtue of bringing this action prior to the tax sale . . . . Second, it is undisputed that the property is subject to taxes and the taxes on the subject property are delinquent. The plaintiff does not dispute [that] the taxes on the subject property are delinquent, although he disputes the amount due on two of the fourteen delinquent tax years." (Citations omitted.) The property subsequently was sold at auction on April 20, 2023, for $150,000,[5] and the statutory redemption deadline was set for October 19, 2023.[6]

On May 30, 2023, the town filed a motion to strike the plaintiff's initial complaint in its entirety for failure to state a claim on which relief could be granted. In its memorandum in support of the motion to strike, the town argued that the court should strike the plaintiff's complaint for the same reasons that the court denied the plaintiff's application for a temporary injunction. The plaintiff did not file an objection to the motion to strike until August 21, 2023, the day that oral argument on the motion to strike was scheduled.

During the August 21, 2023 hearing before the court, *Knox, J.*, on the town's motion to strike, the town argued that the plaintiff asserted irrelevant or inapplicable bases for opposition. The town contended that the plaintiff had not, and could not, cite any cases in support of his position because many of his objections related to conduct that either was explicitly permissible under the applicable statutory scheme or required the plaintiff to exhaust his administrative remedies before bringing the issue before the court. In response, the plaintiff reiterated that he

---

[5] Commercial Funding, LLC, was the successful bidder on the property.

[6] See footnote 2 of this opinion.

disputed the amount of taxes owed and that he should not have to pay the amount demanded by the town to keep his home. The plaintiff argued that the statutory process to refund overpaid taxes "violates due process" and that it is not "fair justice" to require him to apply for a refund through the same tax collector who had "purposely ignore[ed] the discharge[d] lien" and had not "tak[en] payments and everything else." The court granted the town's motion to strike the plaintiff's initial complaint in its entirety on October 20, 2023, concluding that the complaint failed to state a claim for relief under § 12-159 because there are two grounds in § 12-159[7] on which a tax sale can be challenged, and neither ground was alleged in the initial complaint.

The plaintiff failed to redeem the property by the six month statutory redemption deadline of October 19, 2023. On October 20, 2023, the tax collector recorded a deed in favor of Commercial Funding, LLC, the winning bidder at the tax sale of the property, pursuant to § 12-157 (f). On October 23, 2023, the tax collector, after deducting the amount of delinquent taxes from the sale proceeds, deposited the excess sale proceeds with the clerk of the court. Specifically, in a letter addressed to the clerk of the court that accompanied the deposit, which was dated October 23, 2023, the tax collector represented that "[t]he winning bid of $150,000 exceeded the $66,814.47 balance due at the time of the auction. The difference of $83,185.53 was therefore placed into an interest-bearing escrow account for six months, as required by . . . § 12-157 (i)(1). No one had come forward to redeem the property by the statutory deadline of October 19, 2023. All interest accruing on these funds in the meantime became the property of the town under . . . § 12-157 (i)(1). After the redemption period expired, the town deducted the following sums to satisfy additional

---

[7]A person seeking to enjoin or to contest the validity of a tax sale must show either "that the [tax] collector neglected to provide notice pursuant to section 12-157," or that the property was not "by law liable to be sold to satisfy such tax." General Statutes § 12-159; see footnote 3 of this opinion.

taxes and charges due as authorized by . . . §§ 12-140 and 12-157 (i) (1): $74.11 in real estate taxes and $3134.55 in attorney's fees and expenses. I now send you the difference as required by . . . § 12-157 (i) (1) (B). Any person may petition the court to claim this money within ninety (90) days under the procedures set forth in . . . § 12-157 (i) (2)." Thus, the tax collector deposited excess sale proceeds in the amount of $79,976.87 with the clerk of the court pursuant to § 12-157 (i) (1) (B).[8]

The plaintiff filed a substitute complaint on November 6, 2023, which contained many allegations that were substantially similar to those in his initial complaint, as well as some new allegations. In his request for relief, however, the plaintiff removed his request for a temporary injunction to prevent the sale of the property and altered his request for a declaratory judgment. Specifically, the plaintiff requested a judgment declaring that "[t]axes, interest, and lien fees, are not owed by the plaintiff through the 2009 tax year, nor interest and lien fees since that period of time when the tax collector (1) was not accepting partial payments as required by

[8] On January 3, 2024, the town filed an application for the return of tax sale proceeds in which it claimed an interest in the deposited proceeds for attorney's fees and costs it had incurred in defending two civil actions relating to the tax sale of the property. On January 30, 2024, the plaintiff filed a separate application for the return of excess proceeds from the tax sale, which was consolidated with the town's application. Those consolidated actions are pending and proceedings therein were stayed pending adjudication of the town's motion for attorney's fees in the present case and any appeal therefrom, as the town is seeking to have the attorney's fees it has incurred in defending the two civil actions relating to the tax sale be disbursed from the excess proceeds. On May 29, 2024, the town filed a motion to modify the stay, requesting "that the previously ordered stay be modified to allow the town and other creditors to periodically submit their respective claims to the deposited funds for adjudication and disbursal." On June 11, 2024, the court granted the motion, and, on July 8, 2024, it granted the town's unopposed motion for an interim disbursement of $7313.63 in attorney's fees. In an affidavit attached to the motion for an interim disbursement, the town's attorney represented that the attorney's fees that are at issue in the present appeal were not being claimed by the town at that time, although the town reserved a right to do so after the resolution of this appeal.

statute, and **(2)** during the time in which any payment would result in tax year 2009 or earlier, being repaid before such funds would be applied to later tax years. This would result only in a liability of interest that was due in 2013 for any tax year after 2009 until 2013 (i.e., 2010, 2011, 2012). Motor vehicles are not owed belonging to [the plaintiff's father] who was not owner of the property as of April 9, 2009. Attorney's fees are not owed that have not been approved by the court as per [General Statutes §] 12-166. Penalty fees and extraneous fees are not owed that were the cause of the tax collector not accepting payments and falsely stating tax owed in 2009 where there was no valid lien or warrant."

The town responded by filing a motion to strike the substitute complaint on November 9, 2023. In its memorandum in support of its motion to strike, the town argued that "[t]he plaintiff's [substitute] complaint is essentially identical to his previous complaint and should be stricken for the same reasons." In particular, the town argued that the additional allegations failed to satisfy the statutory requirements because the plaintiff did "not even attempt to deny [that] he was aware of the auction before the redemption deadline" and "the plaintiff continue[d] to openly concede that at least some taxes assessed on it remain due and owing."

The plaintiff filed an objection to the defendant's motion to strike the substitute complaint on February 2, 2024, along with a supporting memorandum of law. The court, *Hon. Joseph M. Shortall,* judge trial referee, granted the town's motion to strike the substitute complaint in its entirety following a hearing on February 5, 2024. In its order, the court stated that "[t]he substitute complaint adds nothing of substance to the complaint previously stricken by the court, *Knox, J.* Nor does the plaintiff's belatedly filed objection raise any legal issues not previously dealt with by the court."

The town subsequently filed a motion for judgment on the stricken substitute complaint, which was granted, and the court rendered judgment in favor of the town.

The town thereafter filed a motion for attorney's fees pursuant to § 12-140 with an accompanying affidavit setting forth the fees requested. In an order dated March 21, 2024, the court awarded the town $3540 in attorney's fees.[9] This appeal followed.

I

On appeal, the plaintiff first challenges the judgment rendered in favor of the town on his stricken substitute complaint. On September 9, 2025, this court ordered the parties to be prepared to address at oral argument "whether the appeal from the judgment on the stricken complaint is moot because a declaration that the plaintiff no longer owes any of the taxes or fees at issue would not amount to practical relief in light of the fact that, pursuant to . . . § 12-157 (i), all of the underlying taxes, costs and fees must have been paid before the town deposited any excess proceeds with the trial court." On September 11, 2025, we also ordered the parties to file supplemental memoranda on or before October 8, 2025, addressing the mootness issue. At oral argument before this court and in its supplemental memorandum filed on October 8, 2025, the town asserted that the appeal was not moot due to the fact that the tax sale proceeds fully satisfied the plaintiff's outstanding tax liabilities with the town. As the town explained in its supplemental memorandum to this court, "the plaintiff has never claimed [that] he owed nothing and never asked the trial court to so declare. Instead, the plaintiff's contention is that the tax debt claimed by the town was too high," and the plaintiff's substitute complaint alleged "'an actual amount due that was approximately $21,000.'" At oral argument before this court and in its supplemental memorandum, however, the town contended that the basis for mootness of the plaintiff's appeal stemmed from the plaintiff's failure to avail himself of the statutory remedies for

[9]The plaintiff had filed an objection to the town's motion for attorney's fees and requested oral argument on the motion. The court denied the plaintiff's request for oral argument on March 21, 2024, and decided the matter on the papers.

challenging the 2009 tax lien. Specifically, the town asserted that the plaintiff "failed to use either of his two available statutory remedies to challenge the [2009] tax lien," namely, filing an application with the Superior Court to discharge the tax lien pursuant to General Statutes § 49-51, which was no longer available because the 2009 lien was discharged when the amount of the lien was fully recovered from the tax sale proceeds, or filing an application with the town under General Statutes § 12-129 for a refund of taxes paid in excess of the amount lawfully due, which was not available to the plaintiff given that he did not pay the disputed taxes or timely apply for a refund.

On November 7, 2025, the plaintiff filed a supplemental memorandum[10] in which he argued that his claim on appeal challenging the judgment on his stricken substitute complaint was not moot because a judgment in the present case would determine who owns the property, whether the plaintiff may be evicted from the property,[11] and the amount of excess proceeds from the sale of the property that will be returned to the plaintiff. These claims correspond to the relief requested by the plaintiff in this appeal in his principal appellate brief, namely, that the "declaratory judgment asked for . . . be awarded,"

---

[10]The plaintiff's supplemental memorandum was filed late and without setting forth good cause for the late filing. See Practice Book § 66-3. The town has not filed a motion seeking to strike the plaintiff's supplemental memorandum. For purposes of this appeal, we have considered the supplemental memoranda filed by both parties. See *M.U.N. Capital, LLC* v. *National Hall Properties, LLC*, 163 Conn. App. 372, 374 n.3, 136 A.3d 665, cert. denied, 321 Conn. 902, 136 A.3d 1272 (2016).

[11]On June 7, 2024, Commercial Funding, LLC, commenced a summary process action seeking possession of the premises from the plaintiff, who has not vacated the premises or paid Commercial Funding, LLC, for the use and occupancy of the premises. See *Commercial Funding, LLC* v. *McCullough*, Superior Court, judicial district of Hartford, Docket No. CV-24-6030117-S. Subsequently, the plaintiff was defaulted for failure to plead in the summary process action, the court rendered judgment of possession in favor of Commercial Funding, LLC, and the plaintiff filed an appeal with this court, which is pending. Thereafter, the plaintiff filed a notice of removal of the action to federal court, but the action recently was remanded from federal court on April 8, 2026.

that "this court issue a stay in any eviction proceeding of the plaintiff's property," and that "this court declare invalid the tax deed that was issued unlawfully by the town . . . to . . . Commercial Funding, LLC."

We agree with the town that, because the plaintiff challenges the amount of taxes that he owes and has never claimed that he does not owe any taxes, the appeal is not moot due to the fact that the plaintiff's tax liabilities with the town have been fully satisfied by the tax sale proceeds. Nevertheless, we conclude that the plaintiff's first claim on appeal challenging the judgment rendered on his stricken complaint is moot because there is no practical relief that can be afforded to the plaintiff consistent with the relief requested in his substitute complaint.[12]

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable." (Internal quotation marks omitted.) *In re Zayden J.*, 224 Conn. App. 848, 857–58, 313 A.3d 532, cert. denied, 349 Conn. 916, 316 A.3d 357 (2024). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the

[12] We reach this conclusion with due regard for the legal principle that pleadings should not "be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleadings with reference to the general theory upon which it proceeded, and to substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . [E]ssential allegations may not be supplied by conjecture or remote implication . . . ." (Internal quotation marks omitted.) *GHP Media, Inc.* v. *Hughes*, 226 Conn. App. 162, 172–73, 317 A.3d 799 (2024).

determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *In re Isabella Q.*, 217 Conn. App. 837, 846, 290 A.3d 889, cert. denied, 346 Conn. 927, 292 A.3d 3 (2023). "A case is considered moot if [the] court cannot grant the appellant any practical relief through its disposition of the merits . . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . . Our review of the question of mootness is plenary." (Internal quotation marks omitted.) *In re Zayden J.*, supra, 858.

Our General Statutes set forth procedures by which a taxpayer may contest the validity of a tax sale; General Statutes § 12-159; discharge a tax lien claimed to be invalid; General Statutes § 49-51; or seek a refund of taxes paid allegedly in excess of the amount lawfully due. General Statutes § 12-129. Our Supreme Court has determined that the procedures in our tax statutes are "more than sufficient" to provide a taxpayer with a means of redress regarding disputed taxes. *National CSS, Inc.* v. *Stamford*, 195 Conn. 587, 597, 489 A.2d 1034 (1985). A taxpayer who fails to take advantage of the statutory procedures and remedies cannot "circumvent the state taxation scheme by way of the common law." Id. Our Supreme Court has stated further that "[p]ublic policy requires . . . [it to] not permit taxes collected or paid to be the subject of perpetual litigation . . . . A taxpayer who has not sought redress in an appropriate manner is foreclosed from continuing litigation outside these statutes." (Citation omitted.) Id., 597–98.

In light of these legal principles, there is no practical relief that this court could afford the plaintiff through a disposition of the merits of his appeal. In his substitute complaint, the plaintiff disputed the amount of delinquent taxes owed to the town, alleged that the 2009 tax lien was invalid for a variety of reasons, and sought declaratory relief to remedy those issues in the form of a judgment declaring the amount of taxes or lien fees that he owes. In this appeal, he requests that this court

grant him such declaratory relief. The plaintiff, however, in bringing this declaratory judgment action, has attempted to circumvent the tax statutes and did not seek redress in the appropriate manner; therefore, no practical relief can be afforded to him with respect to the declaratory relief sought, even if this court were to agree that the trial court improperly granted the town's motion to strike his substitute complaint.[13] See *Fitzgerald* v. *Bridgeport*, 218 Conn. App. 771, 775, 292 A.3d 1256 (2023) ("[a]n essential prerequisite to the court's jurisdiction over a declaratory judgment action is that the determination of the controversy must be capable of resulting in practical relief to the complainant" (internal quotation marks omitted)). Moreover, to the extent that the plaintiff's additional allegations in his substitute complaint attempted to raise constitutional claims, the plaintiff was precluded from raising such constitutional claims due to his failure to follow the relevant statutory procedures. See *Finizie* v. *Bridgeport*, 880 F. Supp. 89, 94–95 (D. Conn. 1995) ("[U]nder . . . § 12-129 a taxpayer may pay a tax under protest and raise constitutional challenges in an action to obtain a refund. . . . A taxpayer who bypasses the statutory remedies is barred from raising constitutional claims . . . ." (Citations omitted.)). Consequently, a successful appeal by the plaintiff in this matter would not benefit the plaintiff in any way with respect to the declaratory relief sought. See *In re Tunick*, 215 Conn. App. 551, 558, 284 A.3d 26 (2022) (dismissing appeal as moot when no practical relief could

---

[13] We also conclude that we cannot afford the plaintiff any practical relief with respect to his requests that this court declare the 2009 lien invalid, as the plaintiff never requested such relief in his substitute complaint; see *Roach* v. *Transwaste, Inc.*, 210 Conn. App. 686, 695, 270 A.3d 786 (2022) (judgments cannot exceed scope of claims pleaded, including prayer for relief), aff'd, 347 Conn. 405, 297 A.3d 1004 (2023); and that this court stay "any eviction proceeding of the plaintiff's property," as that request is beyond the scope of this appeal and rests on the faulty premise that the property, which has been conveyed by a recorded deed to Commercial Funding, LLC, still belongs to the plaintiff, and a separate appeal from the judgment of possession rendered in favor of Commercial Funding, LLC, in its summary process action is currently pending with this court. See footnote 11 of this opinion.

be afforded with respect to requested relief on appeal); see also *Hodge* v. *Commissioner of Correction*, 225 Conn. App. 343, 350–51, 315 A.3d 438 (2024) (even if this court assumed, arguendo, that habeas court improperly rejected petitioner's second amended habeas petition, there was no practical relief that could be afforded to petitioner with respect to claims asserted therein; thus, appeal from judgment dismissing second amended habeas petition was moot).

In his supplemental memorandum, the plaintiff cites to case law concerning the collateral consequences exception to the mootness doctrine. In a single sentence, without analysis of the specific prejudicial collateral consequences that would occur, the plaintiff states: "Collateral consequence: conversion: (1) The town, without authorization, (2) assumed and exercised ownership over property belonging to the [plaintiff], (3) to the exclusion of the [plaintiff's] rights." "[F]or a litigant to invoke successfully the collateral consequences doctrine, *the litigant must show* that there is a reasonable possibility that prejudicial collateral consequences will occur." (Emphasis added; internal quotation marks omitted.) *State* v. *Guild*, 353 Conn. 76, 87, 340 A.3d 451 (2025). "[T]he litigant *must establish these consequences by more than mere conjecture*, but need not demonstrate that these consequences are more probable than not." (Emphasis added; internal quotation marks omitted.) *Rek* v. *Pettit*, 222 Conn. App. 132, 139, 303 A.3d 926 (2023), cert. denied, 348 Conn. 948, 308 A.3d 36 (2024).

We conclude that the plaintiff has "not met [his] burden of demonstrating 'that there is a reasonable possibility that prejudicial collateral consequences will occur' . . . ." Id., 141; see also *State* v. *Guild*, supra, 353 Conn. 89; *R. G.-R.* v. *S. R.*, 226 Conn. App. 547, 558,      A.3d    , cert. denied, 349 Conn. 923, 321 A.3d 1131 (2024). Although the plaintiff has invoked this exception to the mootness doctrine in his supplemental memorandum, he has "failed to bring to our attention any adverse collateral consequences that will befall [him] . . . ." *Iacurci* v.

*Wells*, 108 Conn. App. 274, 283, 947 A.2d 1034 (2008). As a result, any such claim is based on speculation and conjecture. See *Office of Chief Disciplinary Counsel* v. *Wynne*, 221 Conn. App. 52, 55 n.2, 299 A.3d 1155 (2023); see also *Samsel* v. *Parks*, 228 Conn. App. 583, 590, 325 A.3d 334 (2024) (because defendant failed to explain how summary process judgment would damage his reputation in community or how it would affect his access to certain veteran's benefits, this court could not determine, without speculating, whether there was reasonable possibility that prejudicial collateral consequences would occur). Accordingly, "[b]ecause the [plaintiff] has not established [prejudicial collateral] consequences by more than mere conjecture, he has not successfully invoked the collateral consequences exception to the mootness doctrine." *State* v. *McElveen*, 117 Conn. App. 486, 492 n.5, 979 A.2d 604 (2009), appeal dismissed, 302 Conn. 532, 29 A.3d 897 (2011) (certification improvidently granted).

Similarly, the plaintiff has failed to demonstrate that his otherwise moot claim on appeal qualifies for review under the capable of repetition, yet evading review exception to the mootness doctrine. "The mootness doctrine does not preclude a court from addressing an issue that is capable of repetition, yet evading review. . . . [F]or an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the ques-

tion must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 13, 287 A.3d 557 (2023). The plaintiff merely references this exception to the mootness doctrine in his supplemental memorandum without providing any analysis applying that exception to the circumstances of this case or explaining how the three requirements have been met. The plaintiff, therefore, has failed to demonstrate that his claim is reviewable under this exception to the mootness doctrine. See *R. G.-R.* v. *S. R.*, supra, 226 Conn. App. 559 (because plaintiff "entirely ha[d] failed to argue that there [was] a reasonable likelihood that the question presented in th[e] case [would] arise again during the pendency of the limited period of time [at issue] . . . she [could not] demonstrate that her claim [was] reviewable under the capable of repetition, yet evading review exception").

For the foregoing reasons and because we cannot afford the plaintiff any practical relief, we dismiss this portion of his appeal as moot.[14]

---

[14] Even if we were to conclude that this portion of the plaintiff's appeal is not moot, the plaintiff's challenge to the judgment rendered on his stricken substitute complaint, nevertheless, would fail, as he waived his right to challenge that judgment.

"Our review of the court's ruling on [a] motion to strike is plenary. . . . After a court has granted a motion to strike, the plaintiff may either amend his pleading [pursuant to Practice Book § 10-44] or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as] [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading. . . . If the allegations in [the plaintiff's] substitute complaint are not materially different from those in his original complaint . . . the waiver rule applies, and the plaintiff cannot now challenge the merits of the court's ruling striking the amended complaint. . . . [S]ee . . . *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 851, 168 A.3d 479 (2017) (if the allegations in a complaint filed subsequent to one that has been stricken are not materially different than those in the earlier, stricken complaint, the party bringing the subsequent complaint cannot be heard to appeal from the action of the trial court striking the subsequent complaint . . .); *Parker* v. *Ginsburg Development CT, LLC*,

## II

## Next, the plaintiff claims that the trial court erred

85 Conn. App. 777, 782, 859 A.2d 46 (2004) (plaintiff bound to court's judgment striking amended complaint because amended complaint was not materially different).

"If the plaintiff elects to replead following the granting of a motion to strike, the defendant may take advantage of this waiver rule by challenging the amended complaint as not materially different than the [stricken] . . . pleading that the court had determined to be legally insufficient. That is, the issue [on appeal becomes] whether the court properly determined that the [plaintiff] had failed to remedy the pleading deficiencies that gave rise to the granting of the [motion] to strike or, in the alternative, set forth an entirely new cause of action. It is proper for a court to dispose of the substance of a complaint merely repetitive of one to which a demurrer had earlier been sustained. . . . *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 850. The law in this area requires the court to compare the two complaints to determine whether the amended complaint advanced the pleadings by remedying the defects identified by the trial court in granting the earlier motion to strike. . . . In determining whether the amended pleading is materially different, we read it in the light most favorable to the plaintiff." (Citations omitted; internal quotation marks omitted.) *Speer* v. *U.S. Bank Trust, N.A.*, 216 Conn. App. 506, 511–12, 285 A.3d 833 (2022), cert. denied, 346 Conn. 911, 289 A.3d 596 (2023). "[A]lthough the facts alleged in a complaint are deemed admitted for the purposes of ruling on a motion to strike, legal conclusions are not. *Seramonte Associates, LLC* v. *Hamden*, 202 Conn. App. 467, 481, 246 A.3d 513 (2021), aff'd, 345 Conn. 76, 282 A.3d 1253 (2022). Stated differently, [a] motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. . . . Id.; see *Bridgeport Harbour Place I, LLC* v. *Ganim*, 303 Conn. 205, 213, 32 A.3d 296 (2011); *Sempey* v. *Stamford Hospital*, 194 Conn. App. 505, 513, 221 A.3d 839 (2019); see also *Perez* v. *Carlevaro*, 158 Conn. App. 716, 726, 120 A.3d 1265 (2015) (legal conclusion pleaded in complaint disregarded if inconsistent with or unsupported by facts alleged)." (Internal quotation marks omitted.) *Mashantucket Pequot Tribal Nation* v. *Factory Mutual Ins. Co.*, 224 Conn. App. 429, 456, 313 A.3d 1219 (2024).

In the present case, in granting the town's motion to strike the initial complaint, the court concluded that the complaint failed to state a claim for relief under § 12-159 because there are two grounds in § 12-159 on which a tax sale can be challenged, and neither ground was alleged in the complaint. Specifically, a person seeking to enjoin or to contest the validity of a tax sale must show either "that the [tax] collector neglected to provide notice pursuant to section 12-157," or that the property was not "by law liable to be sold to satisfy such tax." General Statutes § 12-159. The plaintiff had failed to allege either ground in his initial complaint.

in awarding the town attorney's fees pursuant to § 12-140.[15] We disagree.

We first set forth the standard of review and legal principles relevant to our analysis of this claim. It is well settled that "[w]e review an award of attorney's fees under the abuse of discretion standard of review.

The plaintiff's substitute complaint similarly fails to allege a lack of notice of the tax sale, nor could the plaintiff make such an allegation given that he sought a temporary injunction to enjoin the sale, which necessarily demonstrates that he received notice of the tax sale. Even though the substitute complaint does contain an allegation that "[t]he property was not by law liable to be sold to satisfy the tax," that does not by itself remedy the basis for the court's granting of the motion to strike the initial complaint, as this bare legal conclusion alleged by the plaintiff, which is not deemed admitted, is inconsistent with and unsupported by the other facts alleged in the complaint. In particular, the plaintiff acknowledges in other allegations of the substitute complaint that taxes were due; he merely challenges the amount of those taxes, as well as the amount that he was required to pay to redeem the property. It is also noteworthy that the plaintiff does not claim on appeal that his substitute complaint was materially different from the initial complaint stricken by the court; instead, the plaintiff challenges the merits of the decision of the court striking his initial complaint, which he cannot do given that he chose to replead rather than appeal from that decision. See *Lund* v. *Milford Hospital, Inc.*, supra, 326 Conn. 851; *Speer* v. *U.S. Bank Trust, N.A.*, supra, 216 Conn. App. 511. Accordingly, because there are no significant differences in the repleaded claims in the substitute complaint that would cure the deficiencies in the plaintiff's initial complaint concerning his failure to state claim for relief under § 12-159, the plaintiff has waived his right to appeal from the court's order striking the substitute complaint.

[15] The town contends that this portion of the plaintiff's appeal should be dismissed as moot. According to the town, "the fees and costs awarded to the town in this action have already been approved and disbursed to the town in a separate action. On July 8, 2024, the Superior Court approved disbursing the awards against the plaintiff in his various federal and state lawsuits to the town from the tax sale's excess proceeds under . . . § 12-157 (i). . . . The plaintiff neither objected to that motion nor appealed from its disposition. The court therefore disbursed the funds to the town in check number 100782 in the amount of $7313.63 in August 2024." We do not agree with the town's contention. In the separate action, the town had filed a motion for an interim disbursal of the excess tax sale proceeds held by the court. In an affidavit in support of that motion, the town's attorney represented that, "[o]n March 21, 2024, [the] court, [*Hon. Joseph M.*] *Shortall,* [judge trial referee], [had]

This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Pearlman* v. *Gervolino*, 234 Conn. App. 18, 24–25, 342 A.3d 1057 (2025).

Pursuant to § 12-140, "[a]ll reasonable and necessary costs or expenses . . . for attorney's fees, for all fees and costs incurred by the municipality in defending any civil action brought as a result of a tax sale or an alias tax warrant or which seeks to enjoin or declare unlawful any tax sale or alias tax warrant . . . and for any other fees and expenses incurred or otherwise provided by law *shall be paid by the delinquent taxpayer* . . . ." (Emphasis added.) "[Section] 12-140 unambiguously allows recovery of reasonable attorney's fees incurred in defending [an] action challenging tax sales . . . ." *Ledyard* v. *WMS Gaming, Inc.*, 338 Conn. 687, 699, 258 A.3d 1268 (2021). Pursuant to this authority, it was within the court's discretion to award the town attorney's fees incurred in defending this action.

It does not appear from the plaintiff's principal appellate brief that he is challenging the reasonableness of the attorney's fees awarded. Rather, the plaintiff contends that "he should not be charged attorney's fees, as he should be found to [have] prevail[ed] in this matter," that some of the attorney's fees sought by the town in this matter may be duplicative of attorney's fees sought

---

awarded the town $3540 for its attorney's fees and expenses incurred in the [the present case] . . . plus $50 in costs on March 28, 2024. [The plaintiff] has filed an appeal challenging those two awards, *so they are not claimed at this time* herein but the town reserves the right to do so after his appeal is resolved." (Emphasis added.) In light of that representation, we do not agree with the town's mootness claim.

by the town in a federal court case involving the parties, that he "stands by his legal arguments opposing these fees in the pleadings in the Superior Court in New Britain in this matter," that the town collected attorney's fees for other properties sold at the tax auction that overlap with the fees in this case, and that "[t]here was no fair and just avenue to contest" the attorney's fees awarded by the court. We note that the plaintiff failed to provide citations to the record or relevant authority to support these contentions, and, therefore, we find these claims to be without merit.

The decision of whether to award attorney's fees and, if so, how much to award are matters within the sound discretion of the trial court. See *Ingles* v. *Ingles*, 216 Conn. App. 782, 812, 286 A.3d 908 (2022). "An abuse of discretion in granting counsel fees will be found only if [a reviewing court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) Id. The plaintiff has provided this court with no basis on which we could reach such a determination. Therefore, we conclude that the plaintiff has not demonstrated that the court's award of attorney's fees constituted an abuse of its discretion.[16]

---

[16] We decline to review the plaintiff's claim in his appellate reply brief that the town's claim for attorney's fees is premature, as the claim was raised for the first time in his reply brief; see *Moore* v. *Bryant-Mitchell*, 234 Conn. App. 378, 394 n.21, 344 A.3d 222 (2025) (declining to review claim raised for first time in appellate reply brief); and the claim is inadequately briefed given that the plaintiff simply recited the language of Practice Book § 11-21 regarding motions for attorney's fees and provided no analysis applying that rule of practice to the facts of this case. See *Daigneault* v. *Kolashuk*, 238 Conn. App. 141, 155–56,      A.3d      (2026) ("It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the

The portion of the appeal challenging the judgment rendered on the stricken substitute complaint is dismissed as moot; the appeal from the order awarding attorney's fees is affirmed.

In this opinion the other judges concurred.

---

law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.)). "We are mindful that [i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022); see id., 631 (declining to review claims raised by self-represented party that were inadequately briefed); see also *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 803–804, 256 A.3d 655 (2021).